Cheryl Denise PATTERSON, Plaintiff,

v.

**AUGAT WIRING SYSTEMS, INC., et al., Defendants.**

**Civil Action No. 96–A–218–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 28, 1996.

M. Wayne Sabel, Mark W. Sabel, Jr., Sabel & Sabel, P.C., Montgomery, AL, for Cheryl Denise Patterson.

Edgar W. Ennis, Jr., W. Melvin Haas, III, William M. Clifton, III, Haynsworth, Baldwin, Johnson & Harper, Macon, GA, for Augat Wiring Systems, Inc.

Joseph (Jay) Brady Lewis, Montgomery, AL, for Edwin Sweeney.

W. Melvin Haas, III, William M. Clifton, III, Haynesworth, Baldwin, Johnson & Harper, Macon, GA, for George Kohlman, Jack Foster, Ken Thomas, and Steve Abelman.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, District Judge.

### I. INTRODUCTION

This cause is before the court on the Motion for Partial Judgment on the Pleadings filed by defendant Augat Wiring Systems, Inc. ("Augat") on April 11, 1996.

Cheryl Denise Patterson ("the Plaintiff") filed this action in this court on February 8, 1996. Named as defendants were Augat,

Edwin Sweeney ("Sweeney"), George Kohlman ("Kohlman"), Jack Foster ("Foster"), Ken Thomas ("Thomas"), and Steve Abelman ("Abelman"). On April 1, 1996, the Plaintiff voluntary dismissed, with prejudice, defendants Kohlman, Foster, Thomas, and Abelman. The remaining defendants are Augat and Sweeney (collectively referred to as "the Defendants").

In her Complaint, the Plaintiff claims that the Defendants are liable for sexual and racial harassment, discrimination, retaliation, and various torts under Alabama law. Count One of the Complaint alleges that the Defendants unlawfully discriminated against the Plaintiff on the basis of sex and/or race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). Counts Two and Four allege that the Defendants unlawfully discriminated against the Plaintiff in the terms and conditions of her employment on the basis of sex and/or race, in violation of Title VII and the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"), respectively. Counts Three and Five allege that the Defendants retaliated against the Plaintiff because she opposed their practices of discrimination and harassment and because she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and participated in a subsequent investigation, in violation of Title VII and § 1981, respectively. Lastly, Counts Six, Eight,[1] Nine, Ten, and Eleven allege that the Defendants violated Alabama law by invading the Plaintiff's right to privacy, and committing other torts of negligent supervision, negligent retention, assault and battery, and outrageous conduct, respectively.

On April 11, 1996, Augat filed a Motion for Partial Judgment on the Pleadings. Augat contends that the disparate treatment claims, contained in Counts One, Two, and Three, are limited to matters arising within 180 days of the filing of the Plaintiff's EEOC

charge. Augat also contends that the § 1981 claim, contained in Count Four, is limited, in part, by the statute of limitations. Augat further contends that the Plaintiff's claim of retaliation for her opposition to discrimination, contained in Count Five, is not within the purview of § 1981. Additionally, Augat contends that Count Six fails to state a claim against it for invasion of privacy. Augat also contends that the exclusivity provisions of Alabama's workers' compensation statute bar the claims for negligent supervision and retention, contained in Counts Eight and Nine, respectively. Moreover, Augat contends that it is not vicariously liable for assault and battery, contained in Count Ten. Lastly, Augat contends that it is not liable for outrageous conduct, contained in Count Eleven.[2]

The court has jurisdiction over Counts One, Two, Three, Four, and Five on the basis of a federal question. *See* 28 U.S.C. § 1331. The court also has jurisdiction over Counts Six, Eight, Nine, Ten, and Eleven on the basis of supplemental jurisdiction. *See* 28 U.S.C. § 1367.

For the reasons that follow, the court finds that the motion is due to be DENIED.

## II. *FACTS*

### A. *The Parties*

The pleadings establish the following facts: The Plaintiff is a black female Alabama resident who was employed at Augat during all times relevant in this cause. Augat is an Alabama corporation. Sweeney, an Alabama resident, was a Customer Service Manager at Augat and the Plaintiff's immediate supervisor. Kohlman was Vice–President of Materials at Augat. Foster was Vice–President of Human Resources at Augat. Thomas was Human Resources Manager at Augat. Lastly, Abelman was Vice–President and General Manager of Wiring at Augat.

---

1. No Count Seven exists due to typographical error in the Plaintiff's Complaint.

2. Augat's contention that the Plaintiff lacks standing to assert Title VII and § 1981 claims on behalf of third parties, contained in Counts One,

Two, Three, Four, and Five was conceded by the Plaintiff in her Memorandum Brief in Opposition to Defendant Augat's Motion for Partial Judgment on the Pleadings, at 16.

### B. *Pre–Filing of EEOC Charge*

In 1991, Augat hired the Plaintiff as a Customer Service Representative when Augat purchased the Plaintiff's former employer, National Industries; the Plaintiff had the same job at National Industries, beginning in January 1987. The Plaintiff alleges that Sweeney continually subjected her to sexist and racist slurs. According to the Plaintiff, Sweeney frequently cursed at, and directed demeaning and hostile language toward, the Plaintiff and other female employees at Augat. Specifically, in November 1993, the Plaintiff claims that Sweeney harassed her while she was pregnant and told her that she should have her legs sewn together. According to the Plaintiff, she hemorrhaged as a result of stress created by Sweeney's harassment, and her son was born prematurely. The Plaintiff also alleges that Sweeney engaged in a pattern of discriminatory conduct and created a hostile environment at Augat, adversely affecting the Plaintiff's health.

The Plaintiff claims that she repeatedly reported the discriminatory, hostile, and harassing conduct to Kohlman, Foster, Abelman, and Thomas. According to the Plaintiff, Kohlman, Foster, Abelman, and Thomas offered excuses for Sweeney's conduct. The Plaintiff claims that although she begged Augat to transfer her to another position, even offering to take a $3,000 annual pay cut to be transferred, Augat refused such requests.

The Plaintiff alleges that in November 1994 Augat finally investigated the Plaintiff's complaints, interviewed other employees, and acknowledged that the complaints were valid. Nonetheless, the Plaintiff claims that Augat took no effective action to remedy her complaints. Instead, the Plaintiff alleges that Kohlman, Foster, Abelman, and Thomas encouraged the continuation of the hostile and discriminatory environment.

In particular, the Plaintiff claims that in November and December 1994, Augat forced her to travel with Sweeney to Detroit on business. During that time, the Plaintiff alleges that Sweeney told her that he was "so desperate for sex, he would even have it with a black woman." According to the Plaintiff, after those trips, Thomas and Foster told the Plaintiff that she could not sue Augat. The Plaintiff claims that in February 1995 Kohlman told the Plaintiff that the only reason Abelman ever spoke to her was that he believed that the Plaintiff had a potential legal action.

Although Augat investigated Sweeney's alleged misconduct, according to the Plaintiff, his misconduct continued. The Plaintiff claims that on February 27, 1995 Sweeney told the Plaintiff that "I will write your damn ass up." According to the Plaintiff, Sweeney did not do so because he had no reason to discipline her. The Plaintiff also claims that on March 17, 1995 Sweeney told the Plaintiff, "You forgot to put [the purchase order] on [the load sheet] you bozo."

### C. *Post–Filing of EEOC Charge*

On March 30, 1995, the Plaintiff filed a charge of sex and/or race discrimination and retaliation with the EEOC. According to the Plaintiff, after she filed the EEOC charge, the discrimination and retaliation continued and even escalated. The Plaintiff alleges that on one occasion Kohlman summoned her to his office where he harassed her. The Plaintiff claims that because of certain mechanical parts were unavailable for shipment, Kohlman told her, "I am going to bust your God damn ass. I am going to give you something to go tell Ken Thomas and Jack Foster because I am going to bust your ass and you are going to have something to tell them because I am going to bust your God damn ass." The Plaintiff asserts that she was not at fault for this botched shipment and that Kohlman knew this. At the meeting when the Plaintiff told Kohlman that she was not responsible for the botched shipment, the Plaintiff claims that Kohlman responded, "I don't want to hear none of that God damn shit out of you. I don't want to hear no shit about whose fault it was. I'm just going to bust your ass, I'm giving you fair warning right now, your ass is busted." As a result of that conversation, the Plaintiff alleges that she became emotionally distraught.

On May 8, 1995, the Plaintiff claims that Sweeney, against the Plaintiff's wishes, entered her vehicle as she was driving away

from work. According to the Plaintiff, Sweeney began to curse and harangue the Plaintiff because she filed an EEOC charge. At this time, the Plaintiff alleges that Sweeney placed his hand on the Plaintiff in a rude and angry manner, and, as a result, the Plaintiff's leg was scratched and she was physically bruised. The Plaintiff reported this incident to Thomas and he viewed the scratches. Letters were written to Augat regarding this incident, with copies mailed to the EEOC.

The Plaintiff claims that, as a result of her opposition to such treatment and her EEOC charge, the retaliation against her escalated. In mid- to late-May 1995, the Plaintiff was transferred to a position in the manufacturing plant. According to the Plaintiff, the plant was noisy and dusty, making the environment less desirable to work in compared to the customer service department. Furthermore, the Plaintiff claims that she was stripped of most duties at the plant. At the plant, the Plaintiff alleges that she was closely watched and documented. The Plaintiff claims that on several occasions she asked to be reinstated as a Customer Service Representative, but Augat denied her requests.

After being laid off for two weeks, the Plaintiff returned to Augat. The Plaintiff claims that her new supervisor, Allen Head ("Head"), yelled and screamed at her that he had not told her to be on layoff. However, the Plaintiff asserts that Head knew about her layoff at the time it occurred, and that Augat approved of the layoff. The Plaintiff alleges that when she confronted Head, he yelled at her, exclaiming that her eye looked infected and contagious, and ordered her to leave the premises and not return without a doctor's note. The Plaintiff claims that although she told Head that she had been to an opthamologist, he insisted on humiliating her in front of her co-workers and in sending her home.

### D. *Injuries Claimed*

The Plaintiff alleges that, as a consequence of the intense and continued harassment and retaliation, she suffered serious psychological and medical problems requiring her to take a leave of absence from Augat. During her leave, she was treated by a medical doctor and by a psychologist. The Plaintiff claims that her condition was so serious that the psychologist told her that it would cause total incapacity if left untreated. The Plaintiff alleges that, while on leave, Augat continued to harass her by attempting to get her to come to the plant to sign papers relating to her leave, even though other employees, in similar situations, were not required to do so. Furthermore, the Plaintiff maintains that such harassment occurred after Augat had agreed to send the papers to her.

In September 1995, Augat ordered the Plaintiff to return to work. The Plaintiff alleges that she attempted to return but Augat refused to reinstate her as a Customer Service Representative. According to the Plaintiff, Augat made it clear that she would not be able to return to that position and that this position had been permanently filled. The Plaintiff claims that Augat's attitude and actions remained hostile toward the Plaintiff. As a result, the Plaintiff alleges that she was unable to return to Augat "because her health would not withstand the stress and intimidation."

The Plaintiff believes that all of the adverse treatment that she received by Augat is based on her race and/or sex and that it is in retaliation for opposing discriminatory treatment and for filing an EEOC charge. According to the Plaintiff, she was denied training, transfers, and promotions, and was subjected to sexual and racial harassment and a hostile work environment during her entire period of employment at Augat. The Plaintiff asserts that she always performed her job at Augat in a more than satisfactory manner. The Plaintiff claims that as a direct result of the hostile work environment created by the Defendants, she suffered tremendous stress and anxiety. The Plaintiff also claims that she suffered damage to her career, embarrassment, emotional distress, and damage to her psychological well-being.

### III. *STANDARD*

"Federal district courts have applied a 'fairly restrictive standard in ruling on motions for judgment on the pleadings.'" *Bryan Ashley Int'l. Inc. v. Shelby Williams Indus., Inc.,* 932 F.Supp. 290, 291 (S.D.Fla.

1996) (quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1368 (1990)); *Vagenas v. Continental Gin Co.*, 789 F.Supp. 1137, 1138 (M.D.Ala. 1992), *vacated on other grounds*, 988 F.2d 104 (11th Cir.), *cert. denied*, 510 U.S. 947, 114 S.Ct. 389, 126 L.Ed.2d 337 (1993). Under Fed.R.Civ.P. 12(c), judgment on the pleadings is proper if the movant clearly establishes that no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. *Bryan Ashley*, 932 F.Supp. at 291; *Vagenas*, 789 F.Supp. at 1138; *see Ortega v. Christian*, 85 F.3d 1521, 1524 (11th Cir.1996). Moreover, all factual allegations presented in the pleadings, and all inferences drawn thereof, are to be construed as true and in the light most favorable to the nonmovant. *Ortega*, 85 F.3d at 1524; *Bryan Ashley*, 932 F.Supp. at 291.

## IV. SECTION 1981 AND TITLE VII CLAIMS

### A. Augat Contends that Counts One, Two, and Three are Limited to Matters Arising Within 180 Days of the Filing of the Plaintiff's EEOC Charge

Title VII requires an individual to file a timely charge with the EEOC before pursuing a statutory claim in court. 42 U.S.C. § 2000e–5(e). A charge is timely if it is filed within 180 days after the alleged unlawful employment practice occurred. *Id.* Failure to file before this time elapses requires the court to dismiss a subsequent lawsuit as untimely. *See, e.g., Delaware State College v. Ricks*, 449 U.S. 250, 256, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980); *Smith v. McClammy*, 740 F.2d 925, 927 (11th Cir.1984).

■ There is an exception to the 180-day filing requirement, however, where the actions by an employer are part of a pattern of discrimination such that they constitute a continuing violation. Under this doctrine, actions that took place more than 180 days prior to an EEOC filing may, in some instances, be included in the plaintiff's claim. *Calloway v. Partners Nat'l Health*

*Plans*, 986 F.2d 446, 449 (11th Cir.1993). In determining the existence of a continuing violation, the court looks to several factors, including the subject matter of the discrimination, the frequency of the acts, and the permanence of the decision. *Roberts v. Gadsden Memorial Hosp.*, 835 F.2d 793, 800–01 (11th Cir.1988).

In *Beavers v. American Cast Iron Pipe Co.*, 975 F.2d 792 (11th Cir.1992), the Eleventh Circuit held that " 'Where an employee charges an employer with continuously maintaining any illegal employment practice, he may file a valid charge of discrimination based upon that illegal practice until 180 days after the last occurrence of an instance of that practice.' " *Id.* at 796 (quoting *Gonzalez v. Firestone Tire & Rubber Co.*, 610 F.2d 241, 249 (5th Cir.1980) [3]). In contrast, " '[W]here the employer engaged in a discrete act of discrimination more than 180 days prior to the filing of a charge with the EEOC by the employee, allegations that the discriminatory act continues to adversely affect the employee or that the employer presently refuses to rectify its past violation will not satisfy the requirement of 42 U.S.C. § 2000e–5(e),' " and the plaintiff must file his or her charge within 180 days of the discrete act. *Id.* (quoting *id.*).

■ In this case, the Plaintiff filed her claim with the EEOC on March 30, 1995. Although most of the alleged events occurred outside of the 180-day period, this observation overlooks facts representing a hostile work environment. The pleadings establish that beginning in 1991, when Augat purchased National Industries, Sweeney directed lewd and demeaning remarks, sexual advances, and patently offensive behavior at the Plaintiff, continuing until September 1995 when the Plaintiff was allegedly constructively discharged. The connection between these alleged incidents is sufficient at this stage of the litigation to be considered an ongoing pattern of racial discrimination and sexual harassment by Augat, constituting a hostile work environment. *See, e.g., Saville v. Houston County Healthcare Auth.*, 852

---

**3.** In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

F.Supp. 1512, 1522 (M.D.Ala.1994) (holding that EEOC charge filed by plaintiff more than 180 days after alleged incident of sexual harassment was timely where alleged sexual harassment violation continued as hostile work environment through time of plaintiff's termination). *Accord Quillen v. American Tobacco Co.*, 874 F.Supp. 1285 (M.D.Ala. 1995). It is for the jury to decide when the alleged hostile work environment ended. *See, e.g., id.* at 1292–93; *Saville*, 852 F.Supp. at 1526–27. This court concludes, therefore, that a reasonable jury could find that the Plaintiff's allegations, if shown to violate Title VII, constitute a continuing violation. Accordingly, Augat's Motion for Partial Judgment on the Pleadings is due to be DENIED on these claims against the Defendants.

### B. *Augat Contends that Count Four is Limited, in Part, by the Statute of Limitations*

In Count Four, the Plaintiff alleges that the Defendants unlawfully discriminated against her in the terms and conditions of her employment on the basis of her race, in violation of 42 U.S.C. § 1981. Augat contends that the § 1981 claim in Count Four is limited, in part, by the statute of limitations.

■ The statute of limitations for § 1981 actions is determined by applying the state statute of limitations for personal injury claims. *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660–61, 107 S.Ct. 2617, 2620–21, 96 L.Ed.2d 572 (1987). In Alabama, personal injury claims must be brought within two years after the right of action accrues. Ala. Code 1975, § 6–2–38(*l*). However, the statute of limitations does not begin to accrue for continuing violations until after such violations have ended. *See, e.g., Gonzalez*, 610 F.2d at 250; *Chung v. Pomona Valley Community Hosp.*, 667 F.2d 788, 791 (9th Cir. 1982); *Allen v. Amalgamated Transit Union Local 788*, 554 F.2d 876, 880–81 (8th Cir.), *cert. denied*, 434 U.S. 891, 98 S.Ct. 266, 54 L.Ed.2d 176 (1977); *Williams v. Norfolk & W. Ry. Co.*, 530 F.2d 539, 542 (4th Cir.1975); *Macklin v. Spector Freight Sys., Inc.*, 478

F.2d 979, 994 (D.C.Cir.1973); *Holland v. Board of Trustees of the Univ. of the Dist. of Columbia*, No. CV–A–90–1703–SS, 1994 WL 903606, at *9 (D.D.C. July 22, 1994); *Montgomery v. Atlanta Family Restaurants, Inc.*, 752 F.Supp. 1575, 1583 (N.D.Ga.1990).

■ In this case, the Plaintiff did not file her Complaint until February 8, 1996. Based on the above discussion of Counts One, Two, and Three, the court concludes that a reasonable jury could find that the Plaintiff's allegations, if shown to violate § 1981, constitute a continuing violation based upon a hostile work environment. As stated, it is for the jury to decide when the alleged hostile work environment ended. Accordingly, Augat's Motion for Partial Judgment on the Pleadings is due to be DENIED on this claim against the Defendants.

### C. *Augat Contends that Count Five is Not Within the Purview of § 1981*

■ In Count Five, the Plaintiff alleges that the Defendants systematically retaliated against her, culminating in her discharge, because she opposed the Defendants' practices of discrimination and harassment, because she filed a charge of discrimination with the EEOC, and because she participated in an investigation of the Defendants' alleged misconduct, all in violation of 42 U.S.C. § 1981. Augat contends that the Plaintiff's § 1981 claim for retaliation should not encompass an allegation of retaliation for the filing of EEOC charges, and should be limited to a claim for retaliatory discharge for the Plaintiff's opposition to discrimination.[4]

Section 1981 provides that all persons "shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens...." 42 U.S.C. § 1981(a). In *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the Supreme Court narrowly interpreted this clause by holding that § 1981 "does not apply to conduct which occurs after the formation of a contract and

---

**4.** In the Reply Brief in Support of Defendant Augat's Motion for Partial Judgment on the Pleadings, at 4, Augat concedes that the "Plaintiff's § 1981 claim may proceed so long as it is narrowed to a claim for retaliatory discharge."

which does not interfere with the right to enforce established contract obligations." *Id.* at 171, 109 S.Ct. at 2369. In other words, *Patterson* held that § 1981 only provides a cause of action for discriminatory acts in making and entering contracts, and not for discriminatory acts in the performance of contracts. *Id.* at 176–78, 109 S.Ct. at 2372–73.

On November 21, 1991, Congress enacted the Civil Rights Act of 1991 ("the Act"), Pub.L. No. 102–166, 105 Stat. 1071 (1991). In response to *Patterson,* the Act amended § 1981, *Rivers v. Roadway Express, Inc.,* 511 U.S. 298, ——, 114 S.Ct. 1510, 1517, 128 L.Ed.2d 274 (1994); *Jones v. Firestone Tire and Rubber Co., Inc.,* 977 F.2d 527, 534 (11th Cir.1992), *cert. denied,* 508 U.S. 961, 113 S.Ct. 2932, 124 L.Ed.2d 682 (1993), by defining the term "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Augat concedes that the Act affected *Patterson* but maintains that *Patterson* is a relatively narrow decision. Augat cites dicta in *Toney v. State of Ala.,* 784 F.Supp. 1542 (M.D.Ala.1992), that Congress could not have overruled portions of *Patterson* that never existed:

> Although Patterson's complaint alleged that she was subjected to harassment, denied promotion and ultimately discharged because of her race, in violation of § 1981, only two issues were before the Supreme Court: whether Patterson's claim of racial harassment in her employment is actionable under § 1981, and whether the District Court's jury instruction [was proper].…

*Id.* at 1546, n. 2 (citing *Patterson,* 491 U.S. at 170–71, 109 S.Ct. at 2369–70). As a result, Augat argues that because *Patterson* did not rule on whether retaliation claims were actionable under § 1981, Congress could not have intended to overrule a supposed-*Patterson* prohibition on such claims. Augat fur-

ther argues that lower courts' pre-*Patterson* prohibitions on retaliation claims under § 1981, *see, e.g., Sherman v. Burke Contracting, Inc.,* 891 F.2d 1527 (11th Cir.), *cert. denied,* 498 U.S. 943, 111 S.Ct. 353, 112 L.Ed.2d 317 (1990); *McKnight v. General Motors,* 908 F.2d 104 (7th Cir.1990), *cert. denied,* 499 U.S. 919, 111 S.Ct. 1306, 113 L.Ed.2d 241 (1991), still are good law.

Under the plain language of § 1981(b), § 1981 applies to discriminatory acts occurring in the performance of contracts, and is not restricted to discriminatory acts that result in changes to the contractual relationship. Although § 1981(b) does not directly state that retaliation claims are actionable under § 1981, the legislative purpose of § 1981(b) clearly evinces that Congress intended such claims to be actionable under § 1981. The express purpose of the Act is, *inter alia,* "to provide appropriate remedies for intentional discrimination and unlawful harassment in the workplace," and "to respond to recent decisions of the Supreme Court by expanding the scope of relevant civil rights statutes in order to provide adequate protection to victims of discrimination." Civil Rights Act of 1991, Pub.L. No. 102–166, §§ 3(1) and (4), 105 Stat. 1071 (1991).

Section 1981(b)'s legislative history also indicates that retaliation claims for filing EEOC charges are actionable under § 1981. Congress legislatively overruled *Patterson. Jones,* 977 F.2d at 534. Even assuming, as Augat insists, that *Patterson* does not specifically prohibit retaliation claims under § 1981, Congress still intended to make retaliation claims actionable under § 1981. The House Committee on Education and Labor ("the Committee"), the committee to whom the bill to amend the Civil Rights Act of 1964 was assigned, stated that

> Section 210 would overrule *Patterson* by adding at the conclusion of section 1981 a new subsection (b).…[5] The Committee intends this provision to bar all race discrimination in contractual relations. The

---

**5.** Section 210 defines the term "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contrac-

tual relationship," H.R.Rep. No. 40(I), 102d Cong., 1st Sess. 92 (1991), reprinted in 1991 U.S.C.C.A.N. 549, 630, and § 210 is codified at 42 U.S.C. § 1981(b).

list set forth in subsection (b) is intended to be illustrative rather than exhaustive. In the context of employment discrimination, for example, this would include, but not be limited to, claims of harassment, discharge, demotion, promotion, transfer, *retaliation*, and hiring.

H.R.Rep. No. 40(I), 102d Cong., 1st Sess. 92 (1991), reprinted in 1991 U.S.C.C.A.N. 549, 630 (emphasis added). The fact that the Committee listed "discharge" along with "retaliation" shows that Congress intended to make not only retaliatory discharge but also retaliation in general actionable under § 1981. In particular, the Committee Report indicates that Congress clearly intended § 1981(b) to encompass retaliation against an employee for filing EEOC charges:

> In cutting back the scope of the rights to "make" and "enforce" contracts[,] *Patterson* also has been interpreted to eliminate retaliation claims that the courts had previously recognized under section 1981. *See, e.g., Overby v. Chevron U.S.A., Inc.,* 884 F.2d 470 (9th Cir.1989) (affirming summary judgment against employee on claim of retaliation for protesting racial discrimination in job promotions); *Sherman v. Burke Contracting, Inc.,* 891 F.2d 1527 (11th Cir.1990) (reversing award of damages in employee's favor on a claim of retaliation for filing an EEOC discrimination charge); *Malhotra v. Cotter & Co.,* 885 F.2d 1305 (7th Cir.1989) (questioning whether rights against retaliation survive Supreme Court's decision in *Patterson*). Section 210 would restore rights to sue for such retaliatory conduct.

H.R.Rep. No. 40(I), 102d Cong., 1st Sess. 92 n. 92 (1991), reprinted in 1991 U.S.C.C.A.N. 549, 630. Importantly, this quotation states that the Act overrules not only *Patterson* but also *Sherman,* the Eleventh Circuit case that Augat primarily relies on in contending that retaliation claims for filing EEOC charges are not actionable under § 1981.

In addition to § 1981(b)'s plain language, legislative purpose, and legislative history, case law reinforces the interpretation that retaliation claims for filing EEOC charges are actionable under § 1981. Recently, the Eleventh Circuit summarily affirmed *Cabiness v. YKK (USA), Inc.,* 859 F.Supp. 582 (M.D.Ga.1994), *aff'd mem.,* 98 F.3d 1354, No. 95–9012 (11th Cir. Sept. 24, 1996), which stated that "Section 1981 protections now apply to the *entire* employment context and not simply terminations." *Id.* at 588 (emphasis added). More specifically, the district court implied that claims of retaliation, hostile work environment, and discriminatory terms and conditions of employment are actionable under § 1981.[6] *Id.*

Similarly, other courts that have interpreted § 1981(b) overwhelmingly indicate that retaliation claims are actionable under § 1981. *See, e.g., Steverson v. Goldstein,* 24 F.3d 666, 670 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 731, 130 L.Ed.2d 634 (1995) (affirming jury's finding on plaintiff's § 1981 claim of retaliation for his political activities); *Butts v. City of New York Dep't of Hous. Preservation and Dev.,* 990 F.2d 1397, 1404 (2d Cir.1993) (stating that if § 1981(b) were applied retroactively, plaintiff's allegations of discrimination in promotion and in the terms and conditions of her employment would state a cause of action under § 1981); *Campbell v. Grayline Air Shuttle, Inc.,* 930 F.Supp. 794, 803 (E.D.N.Y. 1996) (holding that plaintiff's claim of reduction in work hours in retaliation for her filing of EEOC charge states a cause of action under § 1981); *Collins v. Executive Airlines, Inc.,* 934 F.Supp. 1378, 1381–82 (S.D.Fla. 1996) (holding that retaliatory discharge, demotion, or other adverse employment claims state a cause of action under § 1981); *Humphrey v. Council of Jewish Fed'ns,* 901 F.Supp. 703, 711 (S.D.N.Y.1995) (holding that plaintiff's allegations—that he was improperly paid for appearances at arbitration proceedings, that he received highly negative

---

**6.** In *Cabiness,* the plaintiff brought claims of retaliation, hostile environment, and discriminatory terms and conditions of employment against her former employer under Title VII and § 1981. Although the district court did not expressly state that these claims were actionable under § 1981,

the court analyzed these claims under § 1981. The court ultimately granted summary judgment because the plaintiff "presented no evidence or argument in support of these claims." 859 F.Supp. at 588.

performance evaluations, that he was harassed by being required to perform tasks outside his job description, that he received shorter notice of his termination than other employees, and that he was terminated in retaliation for his EEOC complaint—each state a claim upon which relief can be granted under § 1981); *Wilson v. Shell Oil Co.,* No. CIV–A–94–3693, 1995 WL 311911, at *5 (E.D.La. May 18, 1995) (holding that a claim of retaliation for filing EEOC charges is cognizable under § 1981); *Adams v. City of Chicago,* 865 F.Supp. 445, 446–47 (N.D.Ill. 1994) (holding that plaintiff states a cause of action under § 1981 by alleging that defendant harassed and retaliated against him for filing EEOC claim and otherwise attempting to receive redress for disparate treatment); *Clark v. City of Macon, Ga.,* 860 F.Supp. 1545, 1552–53 (M.D.Ga.1994) (denying summary judgment on plaintiff's § 1981 claims of discriminatory termination, harassment, and hostile environment); *Lewis v. American Foreign Serv. Ass'n,* 846 F.Supp. 77, 79 (D.D.C.1993) (denying judgment as a matter of law denied a reasonable jury could find that defendant retaliated against plaintiff for filing EEOC charge, in violation of § 1981); *Freeman v. Atlantic Ref. & Mktg. Corp.,* No. 92–7029, 1994 WL 156723, at *8 (E.D.Pa. Apr. 28, 1994) (stating that § 1981 extends to the same broad range of employment actions and conditions as Title VII); *Toney,* 784 F.Supp. at 1547 (stating that if § 1981(b) were applied retroactively, plaintiff's allegations of racial harassment and retaliatory discharge would state a cause of action under § 1981); *Goldsmith v. City of Atmore,* 782 F.Supp. 106, 106–08 (S.D.Ala.1992) (holding that plaintiff is entitled to assert claim of retaliatory transfer under § 1981).

Accordingly, the Augat's Motion for Partial Judgment on the Pleadings is due to be DENIED on this claim.

## V. *STATE LAW CLAIMS*

### A. *Intentional Tort Claims*

As Sweeney's employer, Augat can be held liable only if: (1) Sweeney's "wrongful acts were done in the line and scope of his employment" with Augat; (2) Sweeney's "acts were in furtherance of the business" of Augat; or (3) Augat "participated in, authorized, or ratified the wrongful acts." *See Joyner v. AAA Cooper Transp.,* 477 So.2d 364, 365 (Ala.1985). Distinguishing vicarious and direct liability of an employer, the Alabama Supreme Court explained that:

> The employer is vicariously liable for acts of its employee that were done for the employer's benefit, i.e., acts done in the line and scope of employment or for acts done for the furtherance of the employer's interest. The employer is directly liable for its own conduct if it authorizes or participates in the employee's acts or ratifies the employee's conduct after it learns of the action.

*Potts v. BE & K Constr. Co.,* 604 So.2d 398, 400 (Ala.1992). Because, as an employer, Augat is liable for each intentional tort, if at all, only upon a showing of misconduct by Sweeney or one of its other employees, *see id.,* for each intentional tort claim, this court will discuss Sweeney's liability before discussing Augat's liability.

The Plaintiff claims that Augat is vicariously liable for Sweeney's alleged assault and battery because Sweeney's acts were within the line and scope of his employment at Augat. The Plaintiff also claims that Augat is directly liable for ratifying all of Sweeney's alleged intentional torts as well as torts committed by other Augat employees. To prove employer ratification in Alabama,

> [I]n addition to proving the underlying tortious conduct of an offending employee, a complaining employee must show that the employer (1) had actual knowledge of the tortious conduct of the offending employee and that the tortious conduct was directed at and visited upon the complaining employee; (2) that based upon this knowledge, the employer knew, or should have known, that such conduct constituted sexual harassment and/or a continuing tort; and (3) that the employer failed to take "adequate" steps to remedy the situation.

*Potts,* 604 So.2d at 400.

1. *Augat Contends that Count Six Does Not State a Claim for Invasion of Privacy*

In Count Six, the Plaintiff claims that the Defendants violated her right to privacy un-

**1522**

der Alabama law. Augat contends that the Plaintiff fails to state a claim for invasion of privacy against Sweeney, or alternatively that the Plaintiff fails to state a claim for vicarious liability against Augat.

### a. The Claim for Invasion of Privacy

In Alabama, there are four acts that constitute an invasion of privacy: "(1) the intrusion upon the plaintiff's physical solitude or seclusion; (2) publicity which violates the ordinary decencies; (3) putting the plaintiff in a false but not necessarily defamatory position in the public eye; and (4) the appropriation of some element of the plaintiff's personality for a commercial use." *Phillips v. Smalley Maintenance Servs., Inc.*, 435 So.2d 705, 708 (Ala.1983). In this case, the Plaintiff is proceeding under the "intrusion upon seclusion" theory. Under this theory, invasion of privacy consists of "the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *McIsaac v. WZEW–FM Corp.*, 495 So.2d 649, 651 (Ala.1986) (citing *Phillips*, 435 So.2d 705, and *Restatement (Second) of Torts* § 652B (1977)). Although, the invasion may be by physical intrusion into a place in which the victim has secluded herself, *Id.* at 652–53 (quoting *Restatement (Second) of Torts* § 652B, comment b), it is unnecessary under this theory for the tortfeasor to intrude on the victim's physical privacy. *Phillips*, 435 So.2d at 711 ("One's emotional sanctum is certainly due the same expectations of privacy as one's physical environment."). Moreover, allegations of sexual harassment are sufficient to state a claim of invasion of privacy. *See, e.g., Busby v. Truswal Sys. Corp.*, 551 So.2d 322, 324 (Ala.1989); *Phillips*, 435 So.2d at 711. *Also see Sphere Drake Ins., P.L.C. v. Shoney's, Inc.*, 923 F.Supp. 1481, 1490 (M.D.Ala.1996).

The pleadings establish the following facts that the Plaintiff contends amount to an invasion of her privacy by the Defendants. These facts include Sweeney's continual sexist, racial, and otherwise demeaning and profane statements directed toward the Plaintiff. The Plaintiff claims, for example, that Swee-ney told her, while she was pregnant, that she should have her legs sewn together. The Plaintiff also claims that Sweeney told her that he was "so desperate for sex, he would even have it with a black woman." Furthermore, the Plaintiff alleges that Sweeney entered her vehicle, against her wishes, and proceeded to curse at and harass her.

Augat contends that the only fact pleaded by the Plaintiff that is potentially applicable to a claim of invasion of privacy is Sweeney's one statement regarding his desire for biracial sex. In support of its contention, Augat cites *Moman v. Gregerson's Foods, Inc.*, 570 So.2d 1215 (Ala.1990), and *McIsaac*, 495 So.2d 649 (Ala.1986).

Augat insists that the Alabama Supreme Court, in *Moman*, held that foul language or sexual touching normally do not sustain a claim for invasion of privacy. Augat's interpretation of *Moman*, however, is strongly misleading. In *Moman*, the plaintiff sued her former supervisor and employer, a corporation, for, *inter alia*, invasion of her privacy. The corporation filed a motion for summary judgment *only* on the plaintiff's claim against it, and not for the claim against the supervisor. The Alabama Supreme Court, in *Moman*, never addressed whether the supervisor invaded the plaintiff's privacy. Instead, the court only discussed whether the corporation itself was liable for ratifying the supervisor's alleged misconduct; the court held that the corporation did not ratify the supervisor's alleged misconduct because it lacked knowledge of that conduct. In contrast to Augat's insinuations, the court never held that the supervisor's alleged profanity and sexual touching did not state a claim for invasion of privacy.

In the other case that Augat cites, *McIsaac*, the Alabama Supreme Court held that several requests by an employer for an employee to have dinner with him, to kiss him, or to have an affair with him does not support a claim for invasion of privacy. Unlike the defendant in *McIsaac*, however, the pleadings establish that Sweeney did not merely make sexual advances toward the Plaintiff but, instead, persisted in conduct that created a hostile work environment.

Although the court expresses some doubt as to whether the Plaintiff's pleaded facts are sufficient to sustain a claim for invasion of privacy, the court is unwilling to enter judgment for Augat on that basis at this early stage of the litigation. *See, e.g., Kelley v. Troy State Univ.,* 923 F.Supp. 1494, 1503 (M.D.Ala.1996) (denying motion to dismiss invasion of privacy claim where defendant: made sexually explicit remarks and jokes at the expense of women; made degrading personal comments to plaintiff, such as telling her she was having "a blond attack" when she made an error, and to "show a little leg" when a male colleague was coming to the office; and on several occasions, defendant struck plaintiff, either with an open hand or a closed fist). Accordingly, Augat's Motion for Partial Judgment on the Pleadings is due to be DENIED on this claim on the basis that no claim is stated for invasion of privacy.

### b. The Claim Against Augat

▮ The Plaintiff claims that Augat ratified the alleged invasion of privacy by Sweeney and other Augat employees. As an employer, liability against Augat for invasion of privacy is dependant first upon a finding that Sweeney or other Augat employees committed invasion of privacy. As such, this court will assume for purposes of the claim against Augat that Sweeney or other Augat employees committed such tortious conduct. In this case, the pleaded facts do not indicate that the alleged tortious conduct by Sweeney and other Augat employees were within the line and scope of their employment or in furtherance of Augat's business. Therefore, the question for the court is whether Augat participated in, authorized, or ratified the alleged tortious conduct of Sweeney or its other employees, and is directly liable.[7]

Augat seems to argue that it lacked actual knowledge of its employees' alleged invasion of the Plaintiff's privacy. Augat cites *Moman* in contending that more than two other persons beside the victim need to inform a tortfeasor's employer about the tortfeasor's conduct. *Moman,* however, does not state

anything remotely close to such a contention. Importantly, in *Moman,* the plaintiff *never* informed *any* management personnel of the tortfeasor's conduct. The *Moman* plaintiff argued that the tortfeasor's employer ratified the tortfeasor's alleged misconduct because, *inter alia,* two other employees had complained about the tortfeasor's alleged misconduct directed at them, and *not* at the plaintiff. The court found no evidence that anyone in management knew of the tortfeasor's alleged misconduct toward the plaintiff.

In contrast, the Plaintiff's Complaint establishes that she reported Sweeney's tortious conduct to top-management personnel at Augat on several occasions. Significantly, Augat does not contend that it did not know of Sweeney's alleged misconduct directed at the Plaintiff, but instead seems to contend that there needs to be more than two other persons also complaining about Sweeney's alleged misconduct in order to be extra sure that Augat knew about Sweeney's alleged misconduct. This court disagrees and finds that the Plaintiff's pleaded facts establish that Augat knew of Sweeney alleged invasion of the Plaintiff's privacy.

Augat does not address the second or third element of ratification. With respect to the second element, assuming the conduct of Sweeney or other Augat employees constituted an invasion of the Plaintiff's privacy, because of the many complaints directed at Augat's top-management personnel, at the very least, Augat should have known that such conduct constituted a continuing tort. In discussing the third element, the Alabama Supreme Court stated that "[E]vidence that an employer, after learning of the tortious conduct, failed to stop the tortious conduct of the offending employee presents a question of fact, unique under the circumstances of each case, as to whether the steps taken to stop the conduct were adequate." *Potts,* 604 So.2d at 401. The Plaintiff's Complaint establishes that after the Plaintiff reported Sweeney's tortious conduct to Augat's top-management personnel, "Augat conducted a so-called 'investigation' of [the P]laintiff's

---

7. In its Brief in Support of its Motion for Partial Judgment on the Pleadings and in its Reply Brief, Augat misstates that participation, authorization, or ratification constitutes vicarious, rather than direct, liability.

complaints, interviewed other employees, and acknowledged that [the P]laintiff's complaints were valid." Yet, the pleaded facts establish that no effective action was taken to remedy the problem. According to the pleadings, even after Augat learned of Sweeney's alleged tortious conduct, the Plaintiff was subjected to continued harassment by Sweeney and other Augat employees, and was constructively discharged for discriminatory and retaliatory reasons. Accordingly, Augat's motion for Partial Judgment on the Pleadings is due to be DENIED on this claim against Augat.

### 2. *Augat Contends that It is Not Liable for Assault and Battery in Count Ten*

In Count Ten, the Plaintiff claims that the Defendants committed assault and battery against her under Alabama law. Augat contends that the Plaintiff fails to state a claim for vicarious liability against Augat.

#### a. *The Claim of Assault and Battery*

■ Under Alabama law, an assault and battery consists of the "touching by one person of the person of another in rudeness or anger." *Whitlow v. Bruno's, Inc.*, 567 So.2d 1235, 1239 (Ala.1990) (internal citations and quotations omitted). The Alabama Supreme Court has explained that

> A successful assault becomes a battery. A battery consists in an injury actually done to the person of another in an angry or revengeful or rude or insolent manner, as by ... in any way touching him in anger.... [T]he question of bodily pain is important only as affecting the damages.

*Surrency v. Harbison*, 489 So.2d 1097, 1104 (Ala.1986) (internal citations and quotation marks omitted).

■ The pleadings establish that, while the Plaintiff was employed at Augat, and on Augat's premises, Sweeney entered the Plaintiff's vehicle, against her wishes, and placed his hand on the Plaintiff in a rude and angry manner. The pleadings further establish that, as a result, the Plaintiff's leg was scratched and she was physically bruised. As pleaded, a jury could reasonably find that these facts constitute the tort of assault and battery by Sweeney. Accordingly, Augat's

motion for Partial Judgment on the Pleadings is due to be DENIED on the basis that the Complaint fails to state a claim.

#### b. *The Claim Against Augat*

■ The Plaintiff claims that Augat ratified Sweeney's alleged assault and battery. For purposes of this claim against Augat, this court will assume that Sweeney committed assault and battery. The Plaintiff asserts that the assault and battery is part of a general pattern of retaliation that occurred both before and after the assault and battery, and that this pattern constitutes Augat's ratification or encouragement of Sweeney's assault and battery. This court disagrees, because the assault and battery is the basis of this ratification claim and is separate from other tortious conduct that is the basis of other claims. *See, e.g., Saville*, 852 F.Supp. at 1542 n. 37 (denying summary judgment by institutional defendants on invasion of privacy claim but granting summary judgment on assault and battery claim). In this case, it is undisputed that after Sweeney was counseled by Augat, he did not assault or batter the Plaintiff again. As such, Sweeney's alleged assault and battery was not a continuing tort. This court thus finds that Augat did not ratify Sweeney's alleged assault and battery, and is not directly liable for such misconduct.

The Plaintiff also claims that Sweeney's alleged misconduct was within the line and scope of his employment at Augat. The Alabama Supreme Court stated that the determination of whether certain conduct of an employee is within the line and scope of his or her employment depends upon " 'the service in which the employee is engaged.' " *Doe v. Swift*, 570 So.2d 1209, 1211 (Ala.1990) (quoting *Solmica of the Gulf Coast, Inc. v. Braggs*, 285 Ala. 396, 232 So.2d 638, 642 (1970)). More specifically,

> "[I]f an employee is engaged to perform a certain service, whatever he does to that end, or in furtherance of the employment, is deemed by law to be an act done within the scope of the employment.... The conduct of the employee ... must not be impelled by motives that are wholly personal, or to gratify his own feelings or

resentment, but should be in promotion of the business of his employment."

*Doe,* 570 So.2d 1209 at 1211 (quoting *Solmica of the Gulf Coast, Inc.,* 232 So.2d at 642). In *Doe,* the Alabama Supreme Court held that sexual misconduct, including assault and battery, by an employee is purely personal and outside the line and scope of his employment. *Id.* at 1211–12 & n. 3 (citing *Joyner,* 477 So.2d 364 (same); *Doe v. United States,* 769 F.2d 174 (4th Cir.1985) (same); *Andrews v. United States,* 732 F.2d 366 (4th Cir.1984) (same); *Hoover v. University of Chicago Hosps.,* 51 Ill.App.3d 263, 9 Ill.Dec. 414, 366 N.E.2d 925 (1977) (same); and *Great Atl. & Pac. Tea Co. v. Lantrip,* 26 Ala.App. 79, 153 So. 296 (1934) (same)).

■ Based on the pleadings, however, it is unclear whether Sweeney's alleged assault and battery, which related to Sweeney's anger that the Plaintiff filed an EEOC charge, was motivated solely for personal reasons. The Alabama Supreme Court stated that

"If there is *any* evidence in the record tending to show directly, or by reasonable inference, that the tortious conduct of the employee was committed while the employee was performing duties assigned to him, then it becomes a question for the jury to determine whether the employee was acting from personal motives having no relationship to the business of the employer."

*Hudson v. Muller,* 653 So.2d 942, 944 (Ala. 1995) (emphasis added) (quoting *Hendley v. Springhill Memorial Hosp.,* 575 So.2d 547, 550 (Ala.1990)). It is conceivable that Sweeney was acting in the line and scope of his employment at Augat by seeking to discourage the Plaintiff from suing both him and Augat. This court finds, therefore, that it is a jury question whether Sweeney "was acting from personal motives having no relationship" to Augat's business when he allegedly assaulted and battered the Plaintiff. Accordingly, Augat's motion for Partial Judgment on the Pleadings is due to be DENIED on this claim against Augat.

**3. *Augat Contends that It is Not Liable for Outrageous Conduct in Count Eleven***

In Count Eleven, the Plaintiff claims that the Defendants committed the tort of outrageous conduct against the Plaintiff. Augat contends that it is not liable for such conduct.

***a. The Conduct***

■ To recover under the tort of outrageous conduct[8] in Alabama, a plaintiff must prove that: (1) "the defendant either intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from its conduct;" (2) "the defendant's conduct was extreme and outrageous;" and (3) "the defendant's conduct caused emotional distress so severe that no reasonable person could be expected to endure it." *Jackson v. Alabama Power Co.,* 630 So.2d 439, 440 (Ala.1993) (citing *American Rd. Serv. Co. v. Inmon,* 394 So.2d 361 (Ala.1980) (adopting the tort of outrageous conduct in Alabama)). In other words, the conduct complained of must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Id.* The tort of outrageous conduct only applies "in the most egregious circumstances." *Thomas v. BSE Indus. Contractors, Inc.,* 624 So.2d 1041, 1044 (Ala.1993). As the Alabama Supreme Court has stated,

[M]ere insults, indignations, threats, annoyances, petty oppressions, or other trivialities [do not constitute outrageous conduct]. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language and to occasional acts that are definitely inconsiderate and unkind.

*Surrency,* 489 So.2d at 1105–06 (internal quotation marks omitted). In fact, the Alabama Supreme Court recently observed that in the twelve years since *Inmon* was decided, the court found outrageous conduct as a matter

---

8. In Alabama, the torts of outrage, outrageous conduct, and intentional infliction of emotional distress are the same cause of action. *See Stew-*

*art v. Matthews Indus., Inc.,* 644 So.2d 915, 918 (Ala.1994). This court considers the proper name of the tort to be "outrageous conduct."

of law in only three types of cases: (1) cases relating to wrongful conduct with respect to "family burials;" (2) a case relating to coercive and barbaric insurance-settlement tactics; and (3) a case relating to "egregious sexual harassment." *Thomas,* 624 So.2d at 1044.

■ Although the tort of outrageous conduct is narrow, a question of fact exists as to whether Sweeney's alleged racial discrimination, retaliation, and sexual harassment constitute outrageous conduct and whether the Plaintiff suffered "emotional distress so severe that no reasonable person could be expected to endure it." The facts complained of by the Plaintiff seem to fall between conduct recognized in Alabama as sufficient to state a claim for outrageous conduct and conduct that fails to state such a claim. *Compare Busby,* 551 So.2d at 324 (stating, in dicta,[9] that alleged repeated sexual advances, lewd remarks, and patently offensive behavior by supervisor, including the following, are sufficient to present question of outrageous conduct to jury: invited two of the plaintiffs to swim nude with him; expressed his desire for plaintiffs to come to work braless and wear less clothing; acted as if he was going to pinch one of the plaintiff's breasts with a pair of pliers and his hands; put his arm around the plaintiffs, grabbed their arms, and stroked their necks); *Quillen,* 874 F.Supp. at 1298 & n. 4 (denying summary judgment on outrageous conduct claims against defendants where plaintiff alleged defendant: used vulgar and suggestive language toward plaintiff; he told plaintiff they should get naked; he arranged for them to share a hotel room; he appeared nude in front of plaintiff; and he touched plaintiff on different occasions and in ways that offended her, including tickling, grabbing her by the waist, and trying to kiss her) *with Anderton v. Gentry,* 577 So.2d 1261, 1262–64 (Ala.1991) (holding that defendant's alleged defamatory statements that plaintiff made loans in exchange for sexual favors did not constitute outrageous conduct); *Busby,* 551 So.2d at 327–28 (discussing *McIsaac,* 495 So.2d 649)

(stating that several requests by an employer for an employee to have dinner with him, to kiss him, or to have an affair with him would not support a claim for outrageous conduct); *Surrency,* 489 So.2d at 1100–01, 1105–06 (affirming directed verdict for defendants on outrageous conduct claims where plaintiff alleged co-employee defendant committed assault and battery, and made derogatory statements and threats); *Walker v. City of Elba, Ala.,* 874 F.Supp. 361, 362–63, 365 (M.D.Ala.1994) (granting summary judgment on outrageous conduct claim for defendant where plaintiff alleged that: defendants engaged in pattern and practice of discrimination by paying blacks less than whites for comparable work performed and by giving whites preferential treatment in the hiring process; and that defendants' termination of plaintiff was motivated by racial animus); *Saville,* 852 F.Supp. at 1519–20, 1541 (granting summary judgment for defendants where plaintiff alleged: two unconsented touchings of plaintiff's buttocks; harassing statements; lewd comments; and sexual advances directed at plaintiff); *Bivins v. Jeffers Vet Supply,* 873 F.Supp. 1500, 1504–06, 1510 (M.D.Ala. 1994) (granting summary judgment for defendant where plaintiff alleged defendant's agent directed racial epithet at plaintiff), *aff'd,* 58 F.3d 640 (11th Cir.1995). Although the court expresses doubt, based on the pleadings a question of fact exists as to whether the Plaintiff's allegations constitute outrageous conduct by Sweeney.

*b. The Claim Against Augat*

■ The Plaintiff claims that Augat ratified the alleged outrageous conduct of Sweeney and other Augat employees. For purposes of this claim against Augat, the court will assume that Sweeney or other Augat employees committed outrageous conduct. The pleaded facts do not indicate that the alleged tortious conduct by Sweeney and other Augat employees were within the line and scope of their employment or in furtherance of Augat's business. Therefore, the question

**9.** In *Busby,* the court did not need to reach the issue of whether there was a factual issue as to whether supervisor was liable for outrageous conduct. The supervisor had died and was voluntarily dismissed by the plaintiff. However, the court noted that "there was evidence tending to support the plaintiffs' claims against [the supervisor]." *Busby,* 551 So.2d at 324.

for the court is whether Augat participated in, authorized, or ratified the alleged tortious conduct by Sweeney or other Augat employees, and is directly liable.

The Plaintiff's pleaded facts establish that Augat knew of the alleged outrageous conduct of Sweeney and other Augat employees. Assuming the alleged conduct amounted to outrageous conduct, because of the many complaints on several occasions directed to Augat's top-management personnel, at the very least, Augat should have known that such conduct constituted sexual harassment and/or a continuing tort. Based on the pleadings, after the Plaintiff reported the alleged tortious conduct of Sweeney and other Augat employees to Augat's top-management personnel, Augat investigated the Plaintiff's complaints, interviewed other employees, and acknowledged that the Plaintiff's complaints were valid. However, the pleaded facts establish that no effective action was taken to remedy the problem. Even after Augat learned of the alleged tortious conduct of Sweeney and other Augat employees, the pleadings establish that the Plaintiff was subjected to continued harassment and hostility by Sweeney and other Augat employees and was constructively discharged for discriminatory and retaliatory reasons. As such, the pleadings establish facts that amount to inadequate remedial action by Augat. Accordingly, Augat's Motion for Partial Judgment on the Pleadings is due to be DENIED on this claim against Augat.

### B. *Augat Contends that It is Not Liable for Negligent Supervision and Retention in Counts Eight and Nine*

#### 1. *Augat's Contentions*

In Counts Eight and Nine, the Plaintiff claims that Augat negligently supervised and retained Sweeney, resulting in injury to the Plaintiff. Augat contends that the exclusivity provision, § 25–5–53 of the Alabama Workers' Compensation Act ("AWCA"), Ala. Code 1975, § 25–5–1 et seq., bars the negligent supervision and negligent retention claims.

Section 25–5–53 only applies to injuries subject to the AWCA. *See, e.g., Lowman v. Piedmont Executive Shirt Mfg. Co.*, 547 So.2d 90, 93 (Ala.1989) ("[A]n employer is protected from tort liability only as to injuries expressly covered by the language of the [AWCA]."). The AWCA applies to an employee's claim against an employer for injury in the course of employment. *Kilgore v. C.G. Canter, Jr. & Assocs.*, 396 So.2d 60, 63 (Ala.1981). The court will presume that the Plaintiff and Augat are subject to the AWCA.

The exclusivity provision of § 25–5–53 is an affirmative defense to employer liability under the AWCA. *Baptist Memorial Hosp. v. Gosa*, No. 195016, 1996 WL 506231, at *2, —— So.2d ——, —— (Ala. Sept. 6, 1996). Section 25–5–53 provides, in part, that

> The rights and remedies granted [under the AWCA] to an employee shall exclude all other rights and remedies of the employee ... at common law, by statute, or otherwise on account of *injury*, loss of services, or death. [N]o employer shall be held civilly liable for *personal injury to or death* of the employer's employee, for purposes of this chapter, whose injury or death is *due to an accident or to an occupational disease* while engaged in the service or business of the employer, the cause of which accident or occupational disease originates in the employment. ...

§ 25–5–53 (emphasis added).[10] For purposes of § 25–5–53, the AWCA excludes the follow-

---

**10.** In support of its Motion, Augat cites Alabama Supreme Court cases that state that " 'A plaintiff suing a co-employee must show facts tending to prove that the co-employee set out purposefully, intentionally, or by design to injure someone; a showing of *mere negligence is not enough.*' " *Weaver v. Frazer*, 576 So.2d 200, 202 (Ala.1991) (quoting *Bean v. Craig*, 557 So.2d 1249, 1252 (Ala.1990)). As a result of these cases, Augat reasons that because negligent supervision or

retention claims are, by definition, claims of negligence, such claims are barred by § 25–5–53 of the AWCA.

Although, initially, the Plaintiff did bring claims of negligent supervision and retention against Augat and defendants Kohlman, Foster, Thomas, and Abelman, all claims against the latter four defendants were voluntarily dismissed. Not surprisingly, at no time has the

ing from the definition of the terms "injury" and "personal injury:"

> Injury does not include an injury caused by the act of a third person or fellow employee because of reasons personal to him or her and not directed against him or her as an employee or because of his or her employment. Injury does not include a mental disorder or mental injury that has neither been produced nor proximately caused by some physical injury to the body.

§ 25–5–1(9).

The Alabama Supreme Court held that harassment and extreme verbal abuse are "purely psychological injuries" and are not barred by § 25–5–53. *Busby*, 551 So.2d at 325. The pleaded facts establish that the alleged harassment and retaliation do not constitute "injury" as defined by § 25–5–1(9) because such conduct resulted in mental anguish "that has neither been produced nor proximately caused by some physical injury to the body." As such, the negligent supervision and retaliation claims, to the extent they are based upon harassment and retaliation allegations, are *not* barred by § 25–5–53.

▇▇▇ With respect to the assault and battery allegations as bases for the negligent supervision and retention claims, it is questionable whether the scratch and bruises allegedly suffered by the Plaintiff constitute sufficient "physical injury" to her body to be covered under the AWCA. Citing non-Alabama case law, one commentator explained the nature of physical injury compared to non-physical injury as follows:

> If the essence of the tort, in law, is non-physical, and if the injuries are of the usual non-physical sort, with physical injury being at most added to the list of injuries as a makeweight, the suit should not be barred [by workers' compensation laws]. But if the essence of the action is recovery for physical injury or death, *including in "physical" the kinds of mental or nervous*

*injury that cause disability*, the action should be barred....

2A Arthur Larson, *The Law of Workmen's Compensation Law* § 68.34(a), at 13–180 (1995) (original emphasis). Moreover, in *Ritter v. Allied Chem. Corp.*, 295 F.Supp. 1360 (D.S.C.1968), *aff'd*, 407 F.2d 403 (4th Cir. 1969), the court held that a tort claim against an employer for a scratch on the plaintiff's hand and some soreness that were caused by a supervisor, without any resulting disability, was not barred by South Carolina's workmen's compensation laws. Because the gravamen of the Plaintiff's injuries, as a result of the alleged assault and battery were psychological, and the scratch and bruises, while causing discomfort, did not cause disability, the Plaintiff's allegations of assault and battery amount to non-physical injuries. As such, the negligent supervision and retention claims, to the extent they are based upon assault and battery allegations are *not* barred by § 25–5–53. It is appropriate for this court to consider, therefore, whether the Plaintiff states claims of negligent supervision and retention.

### 2. *Negligent Supervision Claim*

▇▇▇ In Alabama, to recover against an employer under the theory of negligent supervision, a plaintiff first must show "by affirmative proof that the alleged incompetence of the employee was actually known to the employer or was discoverable by the employer if it had exercised care and proper diligence." *Ledbetter v. United Am. Ins. Co.*, 624 So.2d 1371, 1373 (Ala.1993). "[W]hen repeated acts of carelessness and incompetency of a certain character are shown on the part of the [employee, it is proper] to leave it to the jury to determine whether [these acts] would have come to the [employer's] knowledge had the [employer] exercised reasonable care." *See Mardis v. Robbins Tire & Rubber Co.*, 669 So.2d 885, 889 (Ala.1995) (substituting "employer" for "master" and "employee" for servant where defendant em-

---

Plaintiff ever brought claims against Sweeney for negligent supervision or retention because such claims would allege that Sweeney negligently supervised and retained himself. Thus, the Plaintiff only brings claims for negligent supervision and retention against Augat, an employer,

and not against any co-employees. Accordingly, § 25–5–53 does *not* bar the Plaintiff's negligent supervision and retention claims solely because such claims are based upon a theory of negligence.

ployer referred to as "master" and plaintiff employee referred to as "servant" in negligent supervision and training claims). A plaintiff must also show that the above breach of the employer's duty to reasonably supervise his or her employees proximately caused the plaintiff's injury. *See Keel v. Banach,* 624 So.2d 1022, 1026 (Ala.1993) (stating that there are four elements of negligence in Alabama: (1) a duty; (2) breach of the duty; (3) proximate cause; and (4) injury arising therefrom).

■ As an employer, Augat had a duty to reasonably supervise its employees. The facts in the pleadings establish that Sweeney was an incompetent employee. The pleadings further establish that his alleged misconduct was known or discoverable had Augat exercised due and proper diligence. The Plaintiff alleges that when her complaints concerning Sweeney's conduct finally led to an investigation by Augat, no effective remedial action was taken. Instead, the Plaintiff claims that the harassment and retaliation continued and escalated until the time of the Plaintiff's constructive discharge. Based on these pleaded facts, Augat did not exercise reasonable care in supervising Sweeney, proximately causing the Plaintiff mental anguish and ultimately leading to her constructive discharge. Accordingly, Augat's motion for Partial Judgment on the Pleadings is due to be DENIED on this claim against Augat.

### 3. *Negligent Retention Claim*

■ The Alabama Supreme Court has held that an employer "must use due care to avoid the . . . retention of an employee whom [the employer] knows or should know is a person unworthy, by habits, temperament, or nature, to deal with the persons invited to the premises by the employer." *Brown v. Vanity Fair Mills, Inc.,* 291 Ala. 80, 277 So.2d 893, 894 (1973). To recover for negligent retention in Alabama, a plaintiff must show breach of the employer's above duty and that such breach proximately caused the plaintiff's injury.

■ Augat, as an employer, had a duty to Patterson, an invitee on Augat's premises, not to unreasonably retain unworthy employees. *See, e.g., Lawson v. Williams,* 514

So.2d 882, 883 (Ala.1987) (stating that employees are invitees upon their employer's premises). The facts in the pleadings establish that the Plaintiff repeatedly complained to members of Augat's management—Kohlman, Foster, Thomas, and Abelman—about Sweeney's discrimination, retaliation, and harassment toward the Plaintiff. As a result, the pleadings establish that Augat had actual knowledge that Sweeney was a person unworthy by habits, temperament, or nature, to deal with the Plaintiff. By allegedly committing the wrongful conduct, the pleadings establish that Sweeney was an unworthy employee. The facts in the pleadings establish that when the Plaintiff's complaints made to Augat finally led to an internal investigation, Augat failed to take adequate steps to remedy the situation. In fact, the pleadings establish that Augat never disciplined or discharged Sweeney for his alleged wrongful conduct, even after the Plaintiff's complaints proved meritorious. Instead, the facts in the pleadings establish that Sweeney's wrongful conduct continued until the time of the Plaintiff's constructive discharge. Based on these pleaded facts, Augat did not exercise reasonable care in retaining Sweeney, proximately causing the Plaintiff mental anguish and ultimately leading to her constructive discharge. Accordingly, Augat's motion for Partial Judgment on the Pleadings is due to be DENIED on this claim against Augat.

### VI. *CONCLUSION*

For the foregoing reasons, Augat's Motion for Partial Judgment on the Pleadings is due to be and is hereby DENIED.