Linda Gail MILLS, Plaintiff,

v.

WEX–TEX INDUSTRIES, INC., Phillip D. Blackwell and William Nomberg, Defendants.

No. 96–D–1616–S.

United States District Court, M.D. Alabama, Southern Division.

Sept. 25, 1997.

Charles B. Paterson, Montgomery, AL, James H. Pike, Dothan, AL, for plaintiff.

Edward M. Price, Jr., Dothan, AL, Joseph C. Espy, III, Montgomery, AL, James D. Farmer, Dothan, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

On October 29, 1996, Plaintiff Linda Mills ("Mills") filed a seven count Complaint against Wex–Tex Industries, Inc. ("Wex–Tex"), William Nomberg ("Nomberg") and Phillip D. Blackwell ("Blackwell"). Mills was employed as a payroll/accounts receivable clerk in the Dothan, Alabama plant of Wex–

Tex. Nomberg is the principal owner and President of Wex–Tex. Blackwell was Plant Manager of the Dothan plant and Mills' direct supervisor.

Count I of Mills' complaint alleges quid pro quo and hostile environment sexual harassment by the Defendants in violation of Title VII of the Civil Rights Act of 1964.[1] *See* 42 U.S.C.2000e, et. seq. ("Title VII"). In Count II, Mills alleges retaliation in violation of Title VII. Mills contends that actions were taken against her because of her opposition to the alleged sexual harassment. Mills claims that ultimately, she was constructively discharged.

Counts III, IV, V and VII allege various state-law intentional tort claims. Count III alleges Assault and Battery, Count IV Invasion of Privacy, Count V Outrage, and Count VII Defamation. Count VI alleges Negligent Hiring, Training and Retention.

Before the court are motions for summary judgment filed by Nomberg and Blackwell and a motion for partial summary judgment filed by Wex–Tex.[2] Mills filed a Memorandum Of Fact And Law In Opposition To Defendants' Motions on July 25, 1997, and a Supplemental Memorandum Of Fact In Opposition To Defendants' Motions on September 10, 1997. Nomberg and Wex–Tex filed a reply on September 18, 1997.

### JURISDICTION

The court properly exercises subject matter jurisdiction pursuant to 42 U.S.C. § 2000e–5(f), 28 U.S.C. §§ 1331, 1343(a)(4), and § 1367(a). The parties do not contest personal jurisdiction or venue.

### SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in a light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to

any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions

---

1. Mills filed a Charge of Discrimination with the Birmingham District Office of the Equal Opportunity Commission ("EEOC") on May 24, 1996 (Charge of Discrimination Number 130–96–2227). The EEOC issued a "Notice of Right To Sue" on September 29, 1996.

2. Each Defendant filed a motion and brief in support thereof on June 13, 1997.

on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex,* 477 U.S. at 324; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more · than simply show that there is a metaphysical doubt as to the material facts." *Matsushita· Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d ˙538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P, 56(c); *Matsushita,* 475 U.S. at 587. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita,* 475 U.S. at 587; *see also Anderson,* 477 U.S. at 249.

## DISCUSSION

### I. FACTUAL SUMMARY [3]

Mills began work at the Dothan, Alabama plant of Wex–Tex in October of 1995 as a production and payroll clerk. Mills contends that beginning in November of 1995 and continuing through March of 1996, Blackwell took advantage of his position as Mills' supervisor to subject her to a pattern of continued sexual harassment. Mills' Compl. ¶ 9; Mills' Mem. In Opp. at 2. Mills also contends that Nomberg and other Wex–Tex officials were aware of Blackwell's conduct and failed to properly discipline him for his actions. Mills' Compl. ¶ 9. Mills claims that she was eventually constructively discharged on March 8, 1996. Mills' Compl. ¶ 23.

During November of 1995, Blackwell began to show Mills an "unusual amount of attention." Mills' Aff. ¶ 5. He invited her to go on personal errands with him and took her to lunch at local restaurants. *Id.* When Mills expressed concern about getting back to work, Blackwell said "I am the boss." . *Id.* In early November, Mills alleges that Blackwell followed her to her car and said "I would like to fool around with you." *Id.* at 6. A few weeks later, Blackwell followed her home, which frightened both Mills and ·her daughter.[4] *Id.* ¶ 7.

In late November of 1995, Mills contends that Blackwell grabbed her buttocks. *Id.* ¶.9. At the company Christmas party on or about December· 14, 1995, Blackwell pinned Mills against the wall and tried to kiss her. *Id.* ¶ 10. Twice in·late December of 1995, Blackwell grabbed her breasts. *Id.* ¶¶ 15, 17. Around December 22, 1995, Blackwell followed Mills to a local toy store, which made her uncomfortable. *Id.* ¶ 12. Between December 30, 1995 and January 1, 1996, Blackwell called Mills' residence forty-six times, went to her house three times and left a note on her car. *Id.* ¶¶ 18–20. This activity was unwelcome, shocking and humiliating to Mills. *Id.* ¶¶ 9, 10, 12, 15, 17. Sometime in late December, Mills communicated to Blackwell that she could .no longer .tolerate his unwelcome advances and harassment. *Id.* ¶ 11. On December 29, 1995, Mills sought legal advice. *Id.* ¶ 17.

On January 2, 1996, Blackwell asked Mills to· come to his office so that he could speak to her. *Id.* ¶ 21. Mills declined, and Blackwell sat next to her desk and stared at her, making her feel uncomfortable. *Id.* Later that day, Blackwell motioned for Mills to follow him. *Id.* Mills ignored him and turned away, and Blackwell approached her and pinched her on the arm, leaving a welt. *Id.* Blackwell also grabbed Mills by the arm and tried to pull her into his office. *Id.* He gave her a couple of notes, and called her home several times after work. *Id.* One of the notes said "talk to me dammit." Mills' Aff., Exhibit J.

Two days later, on January 4, 1996, Mills and another employee, Gayle Wilemon, met with Defendant Nomberg, President of Wex–Tex and Blackwell's boss, to complain about Blackwell's conduct. Mills' Aff. ¶ 23; Wex–Tex's Answer ¶ 15; Nomberg's Answer ¶ 15. After this meeting, Mills had no other conversation with Nomberg. Nomberg's Mem. In Supp. at 3; Mills' Dep. at 102–103. Later that day, Blackwell went to Wex–Tex's Ashford, Alabama plant to meet with Nomberg

---

**3.** Blackwell disputes many of the factual allegations made by Mills. The following summary construes the facts in a light most favorable to the Plaintiff, the non-moving party, as the court must do when considering Defendants' motions for summary judgment.

**4.** Blackwell admits that between November of 1995 and April of 1996, he visited Mills at ·her residence. Blackwell's Answer ¶ 11(a).

and another Wex–Tex officer named Ricky Bern. Mills' Aff. ¶ 23; Blackwell Dep. At 238. Blackwell returned to the Dothan plant and emptied his desk. Mills' Aff. ¶ 23; Blackwell Dep. at 243. Mills contends that after she complained about Blackwell's behavior, her co-workers exhibited hostility and anger towards her—she was told that she should have "let it go." Mills' Aff. ¶¶ 24, 29.

Beginning January 8, 1996, Blackwell was assigned to Wex–Tex's Ashford, Alabama plant, while Mills remained at the Dothan plant. Mills' Aff. ¶ 28; Blackwell Dep. at 247. Mills claims that after complaining about Blackwell's conduct, her work scheduled was cut back to forty hours per week rather than the fifty plus hours she had regularly been working and she did not get the salary review she had been promised when she was hired. Mills' Aff. ¶ 28.

The next week, Blackwell visited the Dothan plant on several occasions. *Id.* ¶ 30; Blackwell Dep. at 255–56; Blackwell's Answer ¶ 16(a). On one occasion, Mills contends that he waited until other employees left the office and then stood by her desk and stared at her for awhile. Mills' Aff. ¶ 30. On January 22, 1996, Mills called Ricky Bern and complained about Blackwell's continuing conduct and expressed her discomfort with working around Blackwell. *Id.* ¶ 31. She then asked Mr. Bern if Blackwell could be transferred back to Dothan and that she be transferred to Ashford. *Id.* at 31; Bern Dep. at 137. This reassignment eventually took place. Mills' Aff. ¶ 31.

Mills claims that her co-workers continued to shun her, and that on February 15, 1996, she was so upset that she went to the Dothan plant to confront Blackwell and to ask him to tell everyone "to quit being so rude and demanding with me." Mills' Aff. ¶ 33. Blackwell's response was that Nomberg "was still upset" at him. Mills' Aff. ¶ 33; Blackwell Dep. at 260–64. Mills contends that throughout February, Blackwell continued to call her. Mills' Aff. ¶¶ 32, 34–38. On one occasion, Blackwell called Mills at the Ashford plant and said "I just want to tell you how nice you look today." *Id.* ¶ 35; Blackwell Dep. at 265–66. On March 8, 1996,

Blackwell suggested that Mills meet him at Blockbuster Video at midnight. Mills' Aff. ¶ 38; Blackwell Dep. 267–68. Later that day, Mills went to Ricky Bern and told him that she could not take it any longer and that she was quitting her job. Mills' Aff. ¶ 38; Bern Dep. at 143–44.

On March 15, 1996, Mills claims that Blackwell went by her home when she was not there and frightened her children. Mill's Aff. ¶ 39; Blackwell Dep. at 275–76. The next day, on March 16, 1996, Blackwell went by her home again. Mills' Aff. ¶ 40; Blackwell Dep. at 275–76. From mid-March through late April, Blackwell or members of his family continued to drive by Mills' home and make telephone calls to her, and harassed her when they saw her around town. Mills' Aff. ¶¶ 39–51.

In addition to the phone calls, physical contact and visits to her home, Blackwell passed Mills a series of notes throughout her employment. Mills' Aff. ¶ 8; Blackwell's Answer ¶ 12(a). These notes, as well as letters that Blackwell wrote to Mills are attached as Exhibits to Mills' Affidavit. One note says "I'm crazy about you." Mills' Aff., Exhibit A. Two say "I love you." *Id.*, Exhibits B and C. Another, Exhibit D, says "I believe I can get what I want off you with you in a coma so we won't fight but once!" Mills interpreted this note as a threat. *Id.*, ¶ 8. Exhibit F is a typed letter On Blackwell's Wex–Tex letterhead, dated December 20, 1995 and addressed "TO WHOM IT MAY CONCERN." In the letter, Mills is described as "very attractive with large, moderately firm breasts and a firm rear end. Although she wears too much makeup, I still find myself wanting to kiss those nervous lips and run my fingers through that bottle-blond hair every minute we're together. . . . I have no idea what is going to happen to my life but I have this terrible feeling that, if I cannot spend the rest of it with her, it will be to my everlasting sorrow. I cannot understand how this mere child of 27 can make this old man feel this way, but she does." Mills' Aff., Exhibit F. Exhibits I through N contain further statements of Blackwell's feelings for Mills.[5]

---

**5.** Although some of these note and letters indicate that they were written by Blackwell, others have no indication of who wrote them. In her Affidavit, however, Mills states that each Exhibit

## II. TITLE VII CLAIMS

### (a) Count I—Sexual Harassment

■ Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's ... sex." 42 U.S.C.A. § 2000e–2(a)(1). As a matter of law, individuals cannot be held personally liable under Title VII. *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir.1996) (noting that there is no individual responsibility under Title VII); *Smith v. Lomax*, 45 F.3d 402, 403 n. 4 (11th Cir.1995) (noting that individual cannot be held liable under Title VII). Accordingly, the court finds that Blackwell and Nomberg's motions for summary judgment on Count I of Mill's Complaint are due to be granted.

■ However, Wex–Tex may be held liable for the conduct of it's employees. Indeed, the relief granted under Title VII is against the employer. *See Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.1991) ("relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act"). The definition of "employer" under Title VII includes "any agent of such person" which ensures *respondeat superior* liability of the employer for the acts of its agents. *Mason*, 82 F.3d at 1009.

■ Courts recognize two types of sexual harassment claims: quid pro quo and hostile work environment. *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1315 (11th Cir.1989) (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65–66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *Henson v. City of Dundee*, 682 F.2d 897, 908 n. 18, 910 (11th Cir.1982)). Quid pro quo sexual harassment occurs when an "employer alters an employee's job conditions as a result of the employee's refusal to submit to sexual demands," *id.* (citing *Vinson*, 477 U.S. at 65; *Henson*, 682 F.2d at 908), while hostile work environment harassment occurs when defendant's conduct

is "so severe or pervasive that it create[s] a work environment abusive to employees" because of their sex, *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 22–24, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993). While Mills claims both quid pro quo and hostile environment sexual harassment, Mills' Compl. ¶ 25; Mills' Mem. In Opp. at 32, Wex–Tex only moves for summary judgment on Mills' quid pro quo claim. Wex–Tex's Mot. For Summ. J. at 1. Therefore, the court will only address that claim.

■ To establish a prima facie case of quid pro quo sexual harassment a plaintiff must show: "(1) that the employee belongs to a protected group, (2) that the employee was subject to unwelcome sexual harassment, (3) that the harassment complained of was based on sex, and (4) that the employee's reaction to the harassment affected tangible aspects of the employee's compensation, or terms, conditions or privileges of employment." *Sparks v. Pilot Freight Carriers*, 830 F.2d 1554, 1564 (11th Cir.1987) (citing *Henson*, 682 F.2d at 909). Basically, a plaintiff in a quid pro quo action must show that the employer changed the "employee's conditions of employment because of [the employee's] refusal to submit to sexual demands." *Virgo v. Riviera Beach Assocs.*, 30 F.3d 1350, 1362 (11th Cir.1994) (citing *Steele*, 867 F.2d at 1315). To establish the fourth element of his or her prima facie case, a plaintiff must prove that "acceptance of the harassment is an express or implied condition to receiving a job benefit or not receiving negative treatment." *Clark v. Johnson Controls World Servs., Inc.*, 939 F.Supp. 884, 889 (S.D.Ga.1996) (citing *Sowers v. Kemira, Inc.*, 701 F.Supp. 809, 823 (S.D.Ga. 1988) (finding a prima facie case of quid pro quo sexual harassment where plaintiff's rejection of supervisor's advances resulted in delay of promotion)); *see also Sparks*, 830 F.2d at 1564–65 (finding a prima facie case of quid pro quo sexual harassment where

is a true and correct copy of writings furnished to her by Blackwell. She also states that she is familiar with Blackwell's handwriting from having worked with him, and that the notes were written by him. Mills' Aff. ¶ 52. Additionally, Blackwell admits that he produced Exhibits A–E and G–M. Blackwell Dep. at 145–82, 186–87, 195–96, 205–09, 218–20, 229, 271, 285. He de-

nies writing the second paragraph of Exhibit F. *Id.* at 181–183. In construing these writings in a light most favorable to the Plaintiff, the nonmoving party, the court will assume, without deciding, that such writings were written by Blackwell and are authenticated under Federal Rule of Evidence 901(a) and (b).

employee was ultimately fired following her refusal to accede to supervisor's sexual demands). Finally, if a plaintiff can establish that he or she has been subjected to quid pro quo sexual harassment by a supervisor, the plaintiff's employer is held strictly liable for the conduct of the supervisor. *Henson,* 682 F.2d at 910; *Splunge v. Shoney's Inc.,* 874 F.Supp. 1258, 1270 (M.D.Ala.1994).

 In regards to the first requirement, Wex–Tex admits and the court finds that Mills is a member of a protected class under Title VII. Wex–Tex's Resp. To Pl.'s Req. For Admis. ¶ 1. As for the second and third requirements, the court finds that Mills has raised a genuine issue of fact for trial as to whether she was subjected to unwelcome sexual harassment based on her sex. The facts establish a pattern of conduct by Blackwell, a male, directed at Mills, a female, in which Blackwell attempted to establish their relationship into something more than mere co-workers. A reasonable jury could find that Blackwell's repeated notes, phone calls, visits to Mills' home and physical contact with Mills did indeed amount to unwelcome sexual harassment.

As for the fourth element, Wex–Tex argues that Mills cannot establish a prima facie case "because she has not produced any evidence that her reaction to or refusal to accede to sexual demands caused her to lose a tangible job benefit. In fact, the evidence clearly established that Blackwell never demanded sexual favors as a quid pro quo for job benefits." Wex–Tex's Mem. In Supp. at 6–7. Mills contends, however, that Blackwell threatened her job security on numerous occasions. Mills' Dep. at 220. Blackwell told her that Nomberg, the president of the company, would fire whoever Blackwell wanted fired. *Id.* at 221. He also made statements such as "I have too much help in this office." *Id.* at 223.

When Blackwell made these statements to Mills, she knew that he was the Wex–Tex employee with primary responsibility for hiring and firing. Blackwell Dep. at 46. Indeed, Blackwell hired Mills, and at the time she was hired, told her that her salary would be reviewed at the end of the year. Blackwell Dep. at 68–69. He was also responsible for determining employee raises and overtime. *Id.* at 51. Mills alleges that she

wasn't given a salary review as she had been promised and that her overtime hours were cut back. Mills Aff. ¶ 28. Mills does admit that the overtime hours of all employees were cut back. Mills' Dep. at 253. But, she was not given a salary review, as she had been promised when she was hired by Blackwell. Mills' Aff. ¶ 28; Blackwell Dep. at 254. Although Blackwell admits that Mills did not get a salary review, he contends that he, Nomberg and Bern made a collective decision that nobody in the plant would get a salary review that year. Blackwell Dep. at 254. He claims that he communicated that information to all plant employees. *Id.* Mills claims that she never discussed a salary review with anyone. Mills Dep. at 189–92. When construed in a light most favorable to Mills, she was not given a salary review, and Blackwell was part of that decision. She was also eventually forced to transfer from the Dothan plant to the Ashford plant in an attempt to avoid Blackwell. A transfer that she considered to be a detriment to her employment situation. Mills' Aff. § 28.·

In light of all of the evidence offered by Mills, a reasonable jury could conclude that the implicit and overt threatening statements were made, and the adverse employment actions suffered, because of Mills' refusal to accede to Blackwell's desire to pursue a romantic relationship. Accordingly, the court finds that Mills has met her burden of production under the fourth requirement articulated above. Therefore, Wex–Tex's motion for summary judgment on Count I is due to be denied.

(b) *Count II—Retaliation*

Mills also brings a claim under Title VII alleging that she was retaliated against and constructively discharged as a direct result of her opposition to Blackwell's unsolicited and unwelcome sexual advances. Mills' Compl. ¶ 30. Count II only states a claim against Wex–Tex and not against Blackwell and Nomberg. *Id.*

 In addition to protecting employees from sexual harassment, Title VII also protects employees engaging in statutorily protected activities from retaliation by an employer. 42 U.S.C.A. § 2000e–3(a) (1994).

Retaliation is a separate offense under Title VII. *Id.* To establish her prima facie case, Mills must show "(1) that [s]he has engaged in statutorily protected activity; (2) that the employer has taken an adverse employment action; and (3) a causal connection exists between the two." *Meeks v. Computer Associates Int'l,* 15 F.3d 1013, 1021 (11th Cir. 1994); *Donnellon v. Fruehauf Corp.,* 794 F.2d 598, 600–601 (11th Cir.1986) (*citing Canino v. U.S. E.E.O.C.,* 707 F.2d 468, 471 (11th Cir.1983)). To recover for retaliation, Plaintiff need not prove the underlying claim which led to her charge, but she must have had a reasonable belief that the harassment existed. *Tipton v. Canadian Imperial Bank of Commerce,* 872 F.2d 1491, 1494 (11th Cir. 1989).

 The court finds that Mills has met her burden of production for proceeding on her retaliation claim. Informal complaints of discrimination, such as Mills' complaints to Wex–Tex management, can constitute protected activity for purposes of a retaliation claim under Title VII. *See Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 n. 11 (11th Cir.1993). As noted earlier, Mills was not given a salary review as she had been promised when she was initially hired. Further, the facts show that the harassment did not cease after Mills confronted Blackwell and spoke with Nomberg. In fact, Blackwell continued to harass Mills and co-workers began to shun her after she complained. In addition to the continued phone calls, notes, and visits to her home, Blackwell asked her to "stop all this stuff with the lawyer." Mills' Aff. ¶ 41. A reasonable jury could conclude that the evidence in the record, including the continued harassment by Blackwell, the negative treatment by co-workers, including managers, and the failure to provide a salary review, were in retaliation for Mills' complaints about Blackwell's conduct.

### (c) *Constructive Discharge*

 To establish her constructive discharge claim, Mills has to show that "the work environment and conditions of employment were so unbearable that a reasonable person in that person's position would be compelled to resign." *Virgo v. Riviera Beach Assoc. Ltd.,* 30 F.3d 1350, 1363 (11th Cir.1997). The court finds that Mills met her burden of production. Mills took several steps before resigning her position. Wex–Tex did not have a formal procedure for dealing with sexual harassment, Bern Dep. at 37–57, and Blackwell, Mills' harasser, was the Plant Manager at the Dothan plant; he was the person to whom Mills would report her complaints. Bern Dep. at 56–57. She confronted Blackwell and told him to stop harassing her. Blackwell Dep. at 226–27. She notified other Wex–Tex management and Nomberg of Blackwell's conduct. Although management transferred Blackwell to the Ashford plant, he continued the harassment. Wex–Tex management was aware of the continued harassment. Mills' Aff. ¶ 31; Bern Dep. at 143. The harassment continued when Blackwell returned to the Dothan plant and Mills transferred to the Ashford plant. In addition to Blackwell's continuing conduct, other employee's were hostile to Mills following her complaints. Finally, Mills resigned on March 8, 1996. A reasonable jury could conclude that Mills' working conditions were so unbearable that a reasonable person in the same position would be compelled to resign. *See Virgo,* 30 F.3d at 1363. Accordingly, the court finds that Wex–Tex's motion for summary judgment on Count II of Mills' Complaint is due to be denied.

### III. INTENTIONAL TORT CLAIMS

#### (a) *Liability of Defendant Nomberg*

In her joint response to the Defendants' motions for summary judgment, Mills fails to address Defendant Nomberg's liability, or any of the contentions raised in his motion for summary judgment. Nomberg argues that because: (1) he did not participate in any tort, and (2) Blackwell was not Nomberg's agent, he is entitled to summary judgment on all of Mills' intentional tort claims in which he is named as a Defendant (Count IV—Invasion of Privacy, Count V—Outrage, Count VII—Defamation).

 In Alabama, officers and employees of a corporation are liable for torts in which they have participated, regardless of whether they were acting in a corporate capacity. *Ex Parte Charles Bell Pontiac–Buick–Cadillac–GMC, Inc.,* 496 So.2d 774

(Ala.1986); *Crigler v. Salac,* 438 So.2d 1375, 1380 (Ala.1983); *see also Turner v. Hayes,* 1997 WL 272428 (Ala.Civ.App. May 23, 1997). However, such liability requires personal participation in the tortious conduct. *Crigler,* 438 So.2d at 1382. Nowhere does Mills allege that Nomberg personally engaged in the tortious conduct alleged in her complaint, and nowhere does she allege, nor does the record show, that Blackwell was an agent of Nomberg. Accordingly, the court finds that Nomberg's motion for summary judgment on Mills' intentional tort claims is due to be granted.

### (b) *Count III—Assault and Battery*

Mills contends that the "offensive groping, grabbing, pinching, and touching" of Mills by Blackwell, an agent of Wex–Tex, constituted an assault and battery. Mills' Compl. ¶ 32. Blackwell does not address this claim in his motion for summary judgment. Wex–Tex argues that it is entitled to summary judgment on Count III because it did not ratify the alleged wrongful acts. Wex–Tex Mem. In Supp. at 13. Mills argues that Wex–Tex ratified Blackwell's conduct, and therefore is liable under a respondeat superior theory. Mills' Compl. ¶ 32.

■ An assault and battery is defined as any touching by one person of the person or clothes of another in rudeness, in anger, or in a hostile manner. An intent to injure is not required. *Prescott v. Independent Life & Acc. Ins. Co.,* 878 F.Supp. 1545 (M.D.Ala. 1995); *Quillen v. American Tobacco Co.,* 874 F.Supp. 1285 (M.D.Ala.1995); *Saville v. Houston County Healthcare Auth.,* 852 F.Supp. 1512 (M.D.Ala.1994); *Surrency v. Harbison,* 489 So.2d 1097 (Ala.1986); *McDonald v. Royal Globe Ins. Co.,* 413 So.2d 1046 (Ala.1982). In his motion for summary judgment, Blackwell does not contest Mills' allegations that he pinched her, grabbed her breasts, grabbed her buttocks, and pinned her against the wall and tried to kiss her. But, he denies doing these acts in his deposition. He does admit, however, to writing the note that says "I believe I can get what I want off you with you in a coma so we won't fight but once!" Blackwell Dep. at 151–52. Mills interpreted this note as a threat. Mills' Aff. ¶ 8. When these facts and the record as a whole are construed in a light most favorable to Mills, a genuine issue of fact exists for trial as to whether Blackwell's conduct rises to the level of an assault and battery. *See, e.g., Saville,* 852 F.Supp. 1512 (plaintiff's claim survived summary judgment where defendant's prior statements combined with grabbing of plaintiff's buttocks raised a genuine issue of material fact for trial). The question left for determination, therefore, is whether Wex–Tex can be held liable for Blackwell's conduct.

■ For Wex–Tex to be held liable, Mills has to show that: (1) Blackwell's wrongful acts were committed in the line and scope of employment; or (2) that the acts were committed in furtherance of Wex–Tex's business; or (3) that Wex–Tex participated in, authorized, or ratified the wrongful acts. *Mardis v. Robbins Tire & Rubber Co.,* 669 So.2d 885, 889 (Ala.1995); *Potts v. BE & K Constr. Co.,* 604 So.2d 398, 400 (Ala.1992). Mills argues that Wex–Tex is both vicariously and directly liable because Blackwell committed the tortious conduct in the line and scope of employment, as an agent of Wex–Tex, and because Wex–Tex ratified Blackwell's conduct.

■ Wex–Tex is vicariously liable for Blackwell's acts that were done for Wex–Tex's benefit, i.e., acts done in the line and scope of employment or in the furtherance of Wex–Tex's interest. *Potts,* 604 So.2d at 400. The determination of whether the conduct of an employee is within the line and scope of his or her employment depends upon "the service in which the employee is engaged." *Doe v. Swift,* 570 So.2d 1209, 1211 (Ala.1990) (citations omitted). Specifically,

[I]f an employee is engaged to perform a certain service, whatever he does to that end, or in furtherance of the employment, is deemed by law to be an act done within the scope of employment.... The conduct of the employee ... must not be impelled by motives that are wholly personal, or to gratify his own feelings or resentment, but should be in promotion of the business of his employment.

*Doe,* 570 So.2d at 1211 (citations omitted). In *Doe,* the Alabama Supreme Court held that sexual misconduct, including assault and battery by an employee, is purely personal

and outside the line and scope of his employment. *Id.* Therefore, Mills' claim that Wex–Tex is vicariously liable for Blackwell's conduct because it was committed in the line and scope of employment fails. *See also Brewer v. Petroleum Suppliers, Inc.,* 946 F.Supp. 926, 933 (N.D.Ala.1996); *Patterson v. Augat Wiring Sys. Inc.,* 944 F.Supp. 1509, 1514 (M.D.Ala.1996); *Sparks v. Regional Med. Ctr. Bd.,* 792 F.Supp. 735, 748 (N.D.Ala. 1992); *Joyner v. AAA Cooper Transp.,* 477 So.2d 364 (Ala.1985); *Great Atlantic & Pacific Tea Co. v. Lantrip,* 26 Ala.App. 79, 153 So. 296 (1934).

Wex–Tex is directly liable for its own conduct if it authorized or participated in Blackwell's acts or ratified Blackwell's conduct after it learned of Blackwell's actions. *Potts,* 604 So.2d at 400. To show ratification, in addition to proving the underlying tortious conduct of Blackwell, Mills has to show that Wex–Tex (1) had actual knowledge of Blackwell's tortious conduct and that the tortious conduct was directed at and visited upon Mills; (2) that based upon this knowledge, Wex–Tex knew, or should have known, that such conduct constituted ... a tort; and (3) that Wex–Tex failed to take "adequate steps" to remedy the situation. *Mardis v. Robbins Tire & Rubber Co.,* 669 So.2d 885, 889 (Ala. 1995); *Potts v. BE & K Const. Co.,* 604 So.2d 398, 400 (Ala.1992). The record shows that the first time Wex–Tex became aware of Blackwell's tortious conduct was January 4, 1996 when Mills and a co-employee spoke with Nomberg about Blackwell. Mills' Dep. at 82–94. Even then, it is not clear from the record if Mills actually told Nomberg about Blackwell's physical contacts with Mills. *Id.* Nevertheless, assuming Nomberg was aware of Blackwell's tortious conduct, the question becomes whether Wex–Tex took "adequate steps" to remedy the situation after it learned of the conduct.

After being notified of the conduct, Blackwell was called to the Ashford plant to meet with Nomberg and Bern. He was confronted with Mills' allegations, told that his behavior was inappropriate, and instructed to leave Mills alone. Blackwell Dep. at 240–48. Nomberg suspended Blackwell, Nomberg Dep. at 44, and told him that if it happened again, he would be fired. *Id.* at 50. He was also transferred from the Dothan plant to the Ashford plant. Nomberg and Bern met with Mills and told her that Blackwell was being transferred. Mills Dep. at 102. Mills does not allege that Blackwell physically assaulted her after January 4, 1996. Further, after the initial meetings with Nomberg and Bern, Mills never again complained about Blackwell physically assaulting her. The only other time Wex–Tex was aware of Blackwell's other harassing conduct was the day Mills resigned.

In *Potts,* the Alabama Supreme Court stated that "if the undisputed evidence shows that that employer, as soon as it was practical to do so after learning of the conduct, took steps to stop the tortious conduct and the tortious conduct stopped, the steps taken by the employer were adequate, as a matter of law." *Potts,* 604 So.2d at 402. Here, Blackwell did not physically assault Mills following January 4, 1996; accordingly, the court finds that Wex–Tex did not ratify Blackwell's conduct for purposes of Mills' assault and battery claim. *See Patterson,* 944 F.Supp. at 1524 (finding no employer liability after harasser was counseled by employer and plaintiff was not assaulted or battered again); *see also Joyner,* 477 So.2d at 364 (finding no employer liability where conduct did not recur after employee reported incident and employer counseled harasser). Therefore, the court finds that Wex–Tex's motion for summary judgment on count III of Mills' Complaint is due to be granted.

### (c) *Count IV—Invasion of Privacy*

Mills alleges that the actions of Blackwell, Nomberg and Wex–Tex constitute a wrongful intrusion into her solitude, seclusion and private affairs, and that these actions have caused her extreme mental anguish, shame, and humiliation. Mills' Compl. ¶¶ 35, 36. She contends that these actions would also cause outrage, mental suffering, shame or humiliation to a person of ordinary sensibilities. Mills' Compl. ¶ 35. Further, Mills argues that these actions were done in the line and scope of the Defendants' employment with Wex–Tex and with Wex–Tex's acquiescence and ratification. *Id.* ¶ 34.

**1384**

Alabama law recognizes four acts that constitute an invasion of privacy: (1) intrusion upon the plaintiff's physical solitude or seclusion; (2) publicity which violates the ordinary decencies; (3) putting the plaintiff in a false but not necessarily defamatory position in the public eye; and (4) the appropriation of some element of the plaintiff's personality for a commercial use. *Phillips v. Smalley Maintenance Servs., Inc.*, 435 So.2d 705, 708 (Ala.1983). Here, Mills claims invasion of privacy under the "intrusion upon seclusion" theory. Under this theory, the invasion of privacy consists of "the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *McIsaac v. WZEW–FM Corp.*, 495 So.2d 649, 651 (Ala. 1986). Intrusion into the victim's physical privacy is not necessary; "[o]ne's emotional sanctum is certainly due the same expectations of privacy as one's physical environment." *Phillips*, 435 So.2d at 711. Complaints of sexual harassment may sufficiently state a claim for invasion of privacy. *Busby v. Truswal Sys. Corp.*, 551 So.2d 322, 324 (Ala.1989); *Phillips*, 435 So.2d at 711.

While conduct needed to support an invasion of privacy claim need not be extreme and outrageous, in cases where a viable invasion of privacy claim exists, the defendant's behavior frequently approaches such a degree. *Brassfield v. Jack McLendon Furniture, Inc.*, 953 F.Supp. 1438, 1456 (M.D.Ala.1996). In *Busby*, a plant supervisor engaged in severe and pervasive sexual harassment that included obscene and sexually suggestive remarks, gestures, and propositions, as well as physical contact with the plaintiffs. 551 So.2d at 324. The *Busby* court found the supervisor's conduct sufficient for the plaintiffs to state a claim for invasion of privacy. *Id.* In *Phillips*, the Alabama Supreme Court answered a certified question from the Eleventh Circuit in a case where the defendant engaged in physical conduct including "[striking the plaintiff] across the buttocks with his hand," as well as questioning a female employee several times a week about the employee's sexual experiences. The court had "no hesitancy" in concluding that the defendant's conduct consti-

tuted an invasion of privacy. *Phillips*, 435 So.2d at 711.

Blackwell contends that *McIsaac* controls the factual determination in the instant case. There, although an employer repeatedly asked a female employee to "be available," tried to kiss her several times and later attempted to have her fired for resisting his advances, the court found that the employee had failed to establish an invasion of privacy claim. *McIsaac*, 495 So.2d at 650.

What Blackwell fails to address however, is that *McIsaac* did not involve allegations of repeated physical contact. Here, Mills claims that Blackwell grabbed her breasts and buttocks, pinched her, tried to pull her into his office, and pinned her against the wall and tried to kiss her. In addition, Blackwell repeatedly sent Mills suggestive notes, called her at work and at home, and visited her residence. The court finds that when the record is viewed in a light most favorable to Mills, a genuine issue of fact remains for trial on her invasion of privacy claim. Accordingly, Blackwell's motion for summary judgment on Count IV of Mills' complaint is due to be denied.

For Wex–Tex to be liable to Mills for invasion of privacy, Mills must show that Blackwell's conduct was in the line and scope of his employment, that the acts were in furtherance of the business of the employer, or that the employer ratified the wrongful acts. *Joyner*, 477 So.2d at 365. As noted in the court's analysis of Mills' assault and battery claim, Blackwell's harassment of Mills was not within the line and scope of his employment or in furtherance of Wex–Tex's business. *See supra* III(a). As in *Busby*, for example, Blackwell's "conduct was aimed purely at satisfying his own lustful desires; no corporate purpose could conceivably be served by his overtures." *Busby*, 551 So.2d at 327; *see also Doe*, 570 So.2d 1209; Section III(b), *supra*. The question then becomes whether Wex–Tex participated in, authorized, or ratified Blackwell's conduct.

Again, the analysis the court employs is from *Mardis* and *Potts:* to show that Wex–Tex ratified Blackwell's conduct, Mills must show: (1) that Wex–Tex had knowledge of the tortious conduct and that it was direct-

ed at Mills; (2) that based upon this knowledge, Wex–Tex knew or should have known that such conduct constituted a continuing tort; and (3) that Wex–Tex failed to take "adequate steps" to remedy the situation. *See* III(b), *supra.* Mills notified Wex–Tex of Blackwell's conduct on January 4, 1996. Blackwell was called to the Ashford plant to meet with Nomberg and Bern. He was confronted with Mills' allegations, told that his behavior was inappropriate, and instructed to leave Mills alone. Blackwell Dep. at 240–48. He was also transferred from the Dothan plant to the Ashford plant. Nomberg and Bern met with Mills and told her that Blackwell was being transferred. Mills Dep. at 102.

While the court finds that these steps were "adequate" to preclude Mills' assault and battery claim against Wex–Tex, *see* III(b), *supra*, the court finds that these steps were not "adequate" so as to preclude Mills' invasion of privacy claim against Wex–Tex. Although Wex–Tex's actions put an end to Blackwell's physical assaults of Mills, the other harassment persisted; Mills continued to get notes, phone calls and visits at her home. Therefore, the court cannot say as a matter of law that Wex–Tex took "adequate steps" to remedy the situation. A genuine issue of fact remains for trial as to whether Wex–Tex ratified Blackwell's conduct. Accordingly, the court finds that Wex–Tex's motion for summary judgment on Count IV of Mills' Complaint is due to be denied.

#### (d) *Count V—Outrage*

■ Mills contends that Defendants' conduct was "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." Mills' Compl. ¶ 40. To establish the tort of outrage, the plaintiff must allege three elements: "(1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; and (3) the distress was severe." *Moore v. Spiller Associated Furniture, Inc.,* 598 So.2d 835

(Ala.1992) (quoting *Perkins v. Dean,* 570 So.2d 1217, 1219 (Ala.1990)).

■ The Supreme Court of Alabama has summarized the exceedingly narrow scope of the tort as follows:

[T]he tort of outrage is a very limited cause of action that is available only in the most egregious circumstances. As a consequence, this court has held in a large majority of the outrage cases reviewed that no jury question was presented … In fact, in the 12 years since [*American Road Service Co. v.*] *Inmon[,* 394 So.2d 361 (Ala. 1980)*]* was decided, all cases in which this court has found a jury question on an outrage claim have fallen within only three categories: 1) cases having to do with wrongful conduct in the context of family burials … 2) a case where insurance agents employed heavy handed, barbaric means in attempting to coerce the insured into settling an insurance claim … 3) a case involving egregious sexual harassment.

*Thomas v. BSE Indus. Contractors, Inc.,* 624 So.2d 1041, 1044 (Ala.1993).

In *Busby v. Truswal Sys. Corp.,* 551 So.2d 322, 324 (Ala.1989), the Alabama Supreme Court held that a plant supervisor's extreme sexual harassment of his female employees created a jury question as to liability for the tort of outrage. In *Busby,* the court found that there was evidence of at least seventeen incidents of harassment.[6] The court found there was evidence that the harasser,

(1) invited Busby and Money to swim in his pool in the nude with him; (2) told Busby his hands were cold and asked if he could put them in her pockets to keep them warm; (3) told the plaintiffs that he would 'put a stick on their machines' so they could masturbate while working; (4) said that he could perform intercourse as fast as one of the machines at the plant could operate; (5) said that he wished that the plaintiffs would come to work braless and wear less clothing; (6) told one of the plaintiffs that if she had not stayed up all night having sex she could do her work

---

**6.** The *Busby* Court noted the incidents of harassment in the context of deciding the plaintiff's invasion of privacy claim. The Court presumes this same evidence was utilized by the *Busby* Court to assess the plaintiff's outrage claim. *See* 551 So.2d at 324.

properly; (7) told one employee that if she would give him 30 minutes with her that he would fill her pants in nine months for her; (8) acted as if he was going to pinch one plaintiff's breasts with a pair of pliers and with his hands; (9) said that he should send one of the plaintiffs across the street to where a group of men were standing because she stayed sexually aroused all of the time; (10) told one of the plaintiffs that he was very tired and asked her if she would accompany him to the restroom and hold his penis while he urinated; (11) told one of the plaintiffs that her nipples were as large as another employee's entire breasts; (12) attempted to follow one of the plaintiffs into the restroom and when she asked him where he was going, said that he was going to help her; (13) followed one of the plaintiffs one night; (14) said that a table in his office had been damaged when one of the plaintiffs and a male co-employee had sex on top of it; (15) openly stared at the plaintiffs' sexual anatomy; (16) put his arm around the plaintiffs, grabbed their arms, and stroked their necks; and (17) made other lewd remarks and gestures to the plaintiffs.

*Busby,* 551 So.2d at 324. The court found that these actions, considered altogether, could constitute extreme and outrageous conduct. *Id.*

On the other hand, "mere insults, indignations, threats, annoyances, petty oppressions or other trivialities [do not constitute outrageous conduct]." *Surrency* So.2d 1097, 1105 (Ala.1986). In *Saville,* for example, the court granted summary judgment for defendants where the plaintiff alleged two unconsented touchings of plaintiff's buttocks, harassing statements, lewd comments, and sexual advances directed at plaintiff. 852 F.Supp. at 1519–20. While the court notes that the tort of outrage "is a limited remedy to be applied only in flagrantly egregious circumstances," *Thomas,* 624 So.2d at 1044, the court cannot conclude as a matter of law that Blackwell's conduct in this case did not rise to the level of egregiousness necessary to successfully state a claim for outrageous conduct.

The Alabama Supreme Court has noted that some forms of sexual harassment can constitute outrage. As Judge Propst noted in *Brewer:*

> Mere requests for sexual favors are not sufficient [to state a claim for outrage]. *McIsaac,* 495 So.2d at 651. Nor are demands which, if refused, carry a consequence of economic loss or loss of status at employment sufficient. *Id.* However, when the sexual impositions are not merely verbal or economic, but become physical impositions, the harasser is no longer attempting to request sexual favors (in exchange for job security), but is instead attempting to force sexual liberties. An employee can decline even the most obscene request to be touched in a sexual manner. An employee cannot decline a physical act that has already occurred. At that point, the harasser's conduct goes beyond the simply base and oversteps the tolerable bounds of a civilized society.

*Brewer,* 946 F.Supp. at 936 (citing *Busby,* 551 So.2d at 324). Assuming Mills' contentions are true, Blackwell has grabbed her breasts and buttocks and has pinned her against the wall and tried to kiss her. He has also pinched her, leaving a welt, and has grabbed her arm and tried to pull her into his office. He also sent her a note that said "I believe I can get what I want off you with you in a coma so we won't fight but once!" Blackwell "has not simply requested or threatened to touch the plaintiff in a sexual manner, he has repeatedly touched her. As such, his actions may constitute outrageous conduct." *Brewer,* 946 F.Supp. at 936. Accordingly, the court finds that Blackwell's motion for summary judgment on Count V of Mills' Complaint is due to be denied.

As for Wex–Tex, Mills contends that it ratified Blackwell's conduct. Wex–Tex contends that after Mills informed Wex–Tex of her complaints about Blackwell, Wex–Tex took immediate action to take corrective measures and that the incidences that occurred after those actions cannot reasonably be characterized as "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Inmon,* 394 So.2d at 365. While Wex–Tex's actions may

not have been "adequate" in terms of all of Mills' claims, Blackwell's harassment of Mills after January 4, 1996 does not rise to the level of extreme conduct contemplated by *Inmon* and its progeny. There were no physical assaults, and no threatening notes or letters. Consequently, regardless of whether Wex–Tex took "adequate steps" to remedy the situation, it cannot be held liable under an outrage theory for Blackwell's conduct after January 4, 1996. *See, e.g., Walker v. City of Elba,* 874 F.Supp. 361 (M.D.Ala. 1994); *Saville,* 852 F.Supp. 1512; *Anderton v. Gentry,* 577 So.2d 1261 (Ala.1991); *McIsaac,* 495 So.2d 649; *Surrency,* 489 So.2d 1097; *Joyner,* 477 So.2d 364. Accordingly, the court finds that Wex–Tex's motion for summary judgment on count V of Plaintiff's Complaint is due to be granted.

#### (e) *Count VII—Defamation*

Mills contends that the Defendants have libeled, slandered and defamed her "by stating and publishing to third parties and including in company records statements to the effect that the Plaintiff 'had mental problems' and expressing 'concerns' about the Plaintiff's 'mental well-being.'" Mills' Compl. ¶ 50. Mills ¶ claims that these statements were made with actual malice and bad faith in an effort to retaliate against her and that they caused actual harm to her reputation. *Id.* ¶¶ 51, 52. Three statements are at issue here. The first two involve comments by Blackwell to another employee, Gayle Wilemon, on January 2 or 3, 1996, and to Nomberg on January 4, 1996, that Mills was "mentally disturbed," or "a nut." Blackwell Dep. at 227–229; Wilemon Dep. at 24. Second, on January 3, 1996, Mills went into Blackwell's office to use his computer. She saw a file with her name on it, opened it, read it and printed it. Mills' Dep. at 88. The file stated that she had a "mental problem." *Id.*

To establish her defamation claim, Mills must show: (1) a false and defamatory statement concerning her; (2) an unprivileged communication of that statement to a third party; (3) fault amounting to at least negligence; and (4) either actionability of the statement irrespective of special harm (actionable per se) or the existence of special harm caused by publication of the statement (actionable per quod). *Brassfield v. Jack*

*McLendon Furniture, Inc.,* 953 F.Supp. 1438 (M.D.Ala.1996); *Anderton,* 577 So.2d at 1261; *McCaig v. Talladega Publ'g Co.,* 544 So.2d 875 (Ala.1989).

Turning to Blackwell's statements to Nomberg and Wilemon that Mills was "mentally disturbed," Mills fails to show that the statements are "actionable" slander either per se or per quod. Slander per se is actionable if it imputes to the plaintiff an indictable offense involving infamy or moral turpitude. *Anderton,* 577 So.2d at 1263. Slander per quod is a communication to a third person of a defamatory statement subjecting the plaintiff to disgrace, ridicule, odium, or contempt, although not imputing the commission of a crime involving infamy or moral turpitude. *Id.* Mills' Complaint contains conclusory allegations that the remark "caused actual harm to Plaintiff's reputation, caused the Plaintiff to be discredited in her work, caused the Plaintiff to be denied a promised raise in wages and be denied the opportunity for overtime wages and ultimately caused the Plaintiff to be treated in a manner such that she was constructively discharged and lost her job." Mills' Compl. ¶ 52.

The statement that Mills was "mentally disturbed" was made to two individuals. The first, Gail Wilemon, was a co-worker who had no influence over Mills' salary review or overtime opportunities. Wilemon testified that the statement was communicated only to her, Wilemon Dep. at 24, 93, and Mills offers no evidence (nor can the court discern any from a review of the record) that Wilemon communicated Blackwell's statement to others. Further, Mills states that Wilemon "was the only supportive and understanding person," Mills Aff. ¶ 28, and fails to show harm to her reputation. Accordingly, Mills' conclusory allegations are unsubstantiated; the court cannot discern any "actionable" harm derived from Blackwell's statement to Wilemon.

Similarly, even in a light most favorable to Mills, the record fails to show that Blackwell's statement to Nomberg gave rise to "actionable" slander. On January 4, 1996, Mills complained to Nomberg about Black-

well. Later in the day, Blackwell was called to the Ashford plant, where he told Nomberg that Mills had mental problems.

Other than her conclusory assertion noted above, Mills fails to show how this statement led to any harm that could be "actionable." She claims that her overtime was cut and that she did not receive a salary review. But, Mills admits that overtime was cut for all employees, and offers no evidence other than her own speculation that the reason she didn't receive a salary review was because of Blackwell's statement. Additionally, the decision to forego salary reviews, plant-wide and not just for Mills, was made prior to Blackwell's statement to Nomberg. Blackwell Dep. at 254. There is also no evidence that Nomberg communicated Blackwell's statement to anyone else at Wex–Tex, and Mills testified in her deposition that other employees were upset with her because of the complaints she made against Blackwell, not because of Blackwell's statements to Nomberg. Mills' Dep. at 193–94. Accordingly, the court finds no "actionable" harm arising out of Blackwell's statement to Nomberg.

■ As for the second allegedly libelous statement, found by Mills when she was accessing Blackwell's computer, Mills must show that the defamatory matter was published by proof that it was communicated to someone other than herself. *Hoover v. Tuttle,* 611 So.2d 290, 293 (Ala.1992). There is no evidence in the record that this document was ever communicated to a third party. Accordingly, because there is no evidence of an "actionable" harm from the allegedly slanderous statements, and no publication of the allegedly libelous document, the court finds that Blackwell's motion for summary judgment on Count VII of Plaintiff's Complaint is due to be granted. Because the court would have to find that Blackwell was liable for slander or libel to reach the question of Wex–Tex's liability, the court also finds that Wex–Tex's motion for summary judgment on Count VII of Mills' Complaint is due to be granted.

## IV. COUNT VI—NEGLIGENT HIRING, TRAINING AND RETENTION

Mills contends that Wex–Tex breached its duty to refrain from hiring and retaining an employee that would engage in the actions described above, and that Wex–Tex breached its duty to train, supervise, manage, and create employment policies to prevent the actions described above. Mills Compl. ¶¶ 44, 45. Mills contends that as a proximate consequence of "Defendants", negligence and/or wantonness, she has suffered extreme mental anguish, severe emotional distress, the loss of employment and other substantial monetary damages. *Id.* ¶¶ 46, 47.

Wex–Tex does not move for summary judgment on this count of Plaintiff's Complaint. Blackwell and Nomberg address this Count of Mills' Complaint because Mills asserts a claim against the "Defendants." Blackwell asserts that he is entitled to summary judgment because he was Mills' supervisor, not her employer, and "did not hire, train or supervise himself" during the time he was employed with Wex–Tex. Blackwell's Mot. For Summ. J. at 4. Nomberg moves for summary judgment asserting that liability pursuant to this cause of action rests entirely upon the existence of a master and servant relationship. The court agrees, and for the reasons stated below, finds that Blackwell and Nomberg's motions for summary judgment on Count VI of Mills' Complaint is due to be granted.

### (a) *Negligent / Wanton Supervision*

■ Alabama recognizes a cause of action for negligent or wanton supervision. *Big B., Inc. v. Cottingham,* 634 So.2d 999 (Ala.1993); *Northwestern Mutual Life Ins. Co. v. Sheridan,* 630 So.2d 384 (Ala.1993); *Perkins v. Dean,* 570 So.2d 1217 (Ala.1990); *Thompson v. Havard,* 285 Ala. 718, 235 So.2d 853 (1970). Those cases recognize however, that the proper Defendant is the employee's employer. To recover against Wex–Tex under this theory, Mills must show "by affirmative proof that the alleged incompetence of the employee was actually known to the employer or was discoverable by the employer if it had exercised care and proper diligence." *Ledbetter v. United Am. Ins. Co.,* 624 So.2d 1371, 1373 (Ala.1993) (emphasis added).

This may be done by showing specific acts of incompetency and showing that they were brought to the knowledge of the *mas-*

*ter*, or by showing them to be of such a nature, character, and frequency that the *master*, in the exercise of due care, must have had notice of them. While specific acts of alleged incompetency cannot be shown to prove that the servant was negligent in doing or omitting to do the act complained of, it is proper, when repeated acts of carelessness and incompetency of a certain character are shown on the part of the servant, to leave it to the jury to determine whether they would have come to the *master*'s knowledge had the *master* exercised ordinary care.

*Mardis*, 669 So.2d at 889 (emphasis added). The mere fact of an injury occurring is not evidence of negligence, and in negligent supervision cases, "negligence will not be found by inference." *N.J. v. Greater Emanuel Temple Holiness Church*, 611 So.2d 1036, 1037 (Ala.1992); *Anonymous v. Lyman Ward Military Academy*, 701 So.2d 25, 1997 WL 112730 (Ala.Civ.App.1997). A plaintiff must show a causal connection between the employer's breach of the duty to reasonably supervise and plaintiff's injuries. *Patterson*, 944 F.Supp. at 1529 (emphasis added).

■ The scope of the tort is limited to employment related conduct. In *Doe v. Western Restaurants Corp.*, the court found that the employer had no legal duty to supervise their employees outside of work: "[t]his court refuses to saddle *employers* with responsibility for what their employees do during their time off.... [F]or employers to monitor employees' private lives ... would amount to an invasion of the employees' right to privacy." 674 So.2d 561, 564 (Ala.Civ.App. 1995), *cert. denied*, Ala. 1950067 (emphasis added).

In *Big B.*, a shopper sued a store manager for various torts and Big B for negligent or wanton training and supervision. In reviewing the evidence offered in support of the training and supervision claim, the court noted that Big B had run a background check on the manager before hiring him. 634 So.2d at 1003. His application indicated that he had been honorably discharged from the United States Marine Corps and that he had previous management experience. *Id.* The manager also took and passed a "Reid Psychological Systems Test" which Big B used as a tool to evaluate a potential employee's integ-rity. *Id.* Throughout the manager's employment, he received mostly favorable employment evaluations. *Id.*

What Big B failed to do, however, was to review its training manuals with the manager in accordance with company policy. Additionally, the court found that Big B was put on notice that the manager may have been unfit because of a previous sexual harassment accusation by an employee against the manager. *Id.* At the time of the accusation, Big B confronted the manager, told him that his behavior would not be tolerated, and told him that he would be terminated immediately "if management even thought that he was even thinking about anything like that or that he had given anybody the impression that he would do anything like that." *Id.* Big B's policy against sexual harassment was repeatedly emphasized in this and subsequent meetings, and the manager was informed that his future performance would be monitored. *Id.* The employee that made the accusation against the manager was transferred to another store. *Id.* Big B did not personally interview the employee or prepare and forward a formal written report to corporate headquarters. *Id.*

In reviewing these facts, the court found that a genuine issue of fact remained for trial, and that the trial court properly submitted the negligent training and supervision claims to the jury. *Id.* at 1004. Specifically, the court pointed to Big B's failure to review its training manuals with the supervisor, and its failure to properly investigate the accusation of sexual harassment. *Id.* at 1003–04. The court noted that Big B could have interviewed the female employee, and that a formal report could have been prepared. *Id.* "The jury could have found that if [Big B] had sufficiently investigated the incident, [the manager's] attitude toward women and his fitness for employment would have been more seriously reevaluated and he would not have been allowed to remain in a position where he could mistreat female customers or employees." *Id.* at 1004.

In *Patterson*, 944 F.Supp. at 1529, the court also analyzed a negligent supervision claim. It noted that when the plaintiff's complaints about the harassing supervisor

finally led to an investigation by the employer, no effective remedial action was taken. *Id.* at 1529. Further, the harassment and retaliation continued and escalated until the plaintiff was constructively discharged. *Id.* On these facts, the court found that the employer did not exercise reasonable care in supervising the harasser and that this failure was the proximate cause of plaintiff's damages. *Id.*

A review of the record in this case, in light of *Big B* and *Patterson,* establishes that Wex–Tex failed to adequately supervise Blackwell. In contrast to *Big B,* Wex–Tex did not conduct background checks or require Blackwell to take any "screening" tests. Also, Wex–Tex did not have written policies regarding sexual harassment in place at the time of Mills' employment, Wex–Tex's Ans. To Mills' Req. For Admis. 20–25, and did not formally train Blackwell for the human resources aspect of his position. Bern Dep. at 26–30. A reasonable jury could conclude that Blackwell was not properly trained for his position. A jury could also find that once Wex–Tex was aware of Mills' complaints, it failed to adequately investigate her charges. Although Nomberg and Bern had a meeting with Blackwell where they told him to cease his conduct and threatened him with termination if it should continue, as in *Big B* and *Patterson,* a jury could find that these remedial actions were inadequate. Similar to *Patterson,* Wex–Tex's post-complaint actions were insufficient for purposes of halting Blackwell's harassment of Mills. Accordingly, a jury could find that Wex–Tex negligently failed to reasonably supervise Blackwell.

To recover for wanton supervision, Mills must show some degree of consciousness on the part of Wex–Tex that injury was likely to result from its act or omission. *Big B.,* 634 So.2d at 1004. "What constitutes wanton misconduct depends on the facts presented in each particular case." *South Central Bell Tel. Co. v. Branum,* 568 So.2d 795 (Ala.1990). Wantonness is "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others," Ala.Code § 6–11–20(b)(3), it is "an acting, with knowledge of danger ... that the doing or not doing of some act will likely result in injury." *Lynn Strickland Sales & Serv., Inc. v. Aero–Lane Fabricators, Inc.,* 510 So.2d 142, 145 (Ala. 1987).

To substantiate her wanton supervision claim, Mills would have to produce evidence showing that Wex–Tex acted with conscious or reckless disregard of her rights. Not only does she fail to address this claim in any pleadings other than her Complaint, but a review of the record fails to establish wanton conduct on the part of Wex–Tex. Accordingly, the court finds that Mills' wanton supervision claim is due to be dismissed.

### (b) *Negligent / Wanton Retention*

To state a claim for negligent retention, Mills must show that Wex–Tex failed to "use due care to avoid the ... retention of an employee whom [the employer] knows or should know is a person unworthy, by habits, temperament, or nature, to deal with the persons invited to the premises by the employer." *Brown v. Vanity Fair Mills, Inc.,* 291 Ala. 80, 277 So.2d 893, 894 (1973). As in her negligent supervision claim, Mills must show that Wex–Tex breached this duty and that the breach was a proximate cause of her injuries.

Employees are invitees on their employer's premises. *Lawson v. Williams,* 514 So.2d 882, 883 (Ala.1987). Accordingly, Wex–Tex owed a duty to Mills not to unreasonably retain unworthy employees. The question becomes, then, whether a reasonable jury could conclude that Blackwell was an unworthy employee and, if so, whether Wex–Tex unreasonably retained him. The record in this case undeniably establishes that a reasonable jury could conclude that Blackwell was an unworthy employee. Further, Mills put Wex–Tex on notice about Blackwell's "habit, temperament, and nature" when she complained to Nomberg about Blackwell's conduct. The extent of Wex–Tex's remedial activity was to meet with Blackwell, warn him not to engage in future conduct, threaten to fire him if he did, and transfer him to the Ashford plant. As the court noted earlier regarding some of Mills' intentional tort claims, a genuine question of fact remains for trial as to whether these were "adequate steps" to rectify the situation. The facts establish that even after

Wex–Tex took some remedial measures, the harassing conduct continued. Whether Wex–Tex unreasonably retained Blackwell, therefore, is for the determination of a jury.

As in Mills' wanton supervision claim, Mills fails to address her wanton retention claim anywhere in her pleadings other than in her Complaint. A review of the record garners no facts which would substantiate such a claim. Accordingly, the court finds that Mills has established a genuine issue of fact for trial on her negligent retention claim, but that her wanton retention claim is due to be dismissed.

## CONCLUSION

In making the above findings, the court in no way expresses its view as to the proper outcome of this case. For the purposes of addressing Defendants' motions for summary judgment, however, the court is required to construe the facts in a light most favorable to the Plaintiff. In reviewing the record, the court notes that the parties contest many of the material issues, and each side paints strikingly different pictures of the circumstances and events leading up to this lawsuit. The record contains many factual discrepancies indicating that the interaction between Blackwell and Mills may not have been as one sided as Mills contends it to be. For example, Blackwell contests many of the key factual issues raised in Mills' pleadings, and Gayle Wilemon, Mills' only witness, stated in her deposition that she would not believe Mills under oath. Wilemon Dep. at 98. Nevertheless, despite the contested nature of the evidence, Blackwell's alleged conduct was objectively reprehensible, and Mills has established a strong prima facie case for many of her claims. Pursuant to the court's Memorandum Opinion and Order the following issues remain for determination by a jury:

(1) Against Wex–Tex: Count I (Sexual Harassment), Count II (Retaliation and Constructive Discharge), Count IV (Invasion of Privacy), and Count VI (Negligent Retention and Negligent Supervision).

(2) Against Blackwell: Count III (Assault and Battery), Count IV (Invasion of Privacy), and Count V (Outrage).

## ORDER

Based on the foregoing, it is hereby CONSIDERED and ORDERED that:

(1) Defendant Blackwell's motion for summary judgment on Count I, Count VI and Count VII of Plaintiff's Complaint be and the same is hereby GRANTED.

(2) Defendant Blackwell's motion for summary judgment on Count III, Count IV, and Count V of Plaintiff's Complaint be and the same is hereby DENIED.

(3) Defendant Wex–Tex's motion for summary judgment on Count III, Count V and Count VII of Plaintiff's Complaint be and the same is hereby GRANTED.

(4) Defendant Wex–Tex's motion for summary judgment on Count I, Count II, and Count IV of Plaintiff's Complaint be and the same is hereby DENIED.

(5) Defendant Nomberg's motion for summary judgment on Count I, Count IV, Count V, Count VI and Count VII of Plaintiff's Complaint be and the same is hereby GRANTED.

(6) Defendant Nomberg be and the same is hereby DISMISSED from the above styled cause of action.

(7) Plaintiff Mills' claims for wanton supervision and wanton retention be and the same are hereby DISMISSED.